## Northern Security Insurance Co. v. Keith Hatch and Dawn Tanko

[683 A.2d 392]

No. 95-607

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed August 9, 1996

*Leo A. Bisson, Jr.* of *Downs Rachlin & Martin*, St. Johnsbury, for Plaintiff-Appellant.

*Geoffrey M. FitzGerald* and *Brian J. Grearson* of *Brian J. Grearson, P.C.*, Barre, for Defendant-Appellee.

**Dooley, J.** This appeal arises from a declaratory judgment action brought by Northern Security Insurance Company against Keith Hatch and Dawn Tanko. Northern Security alleged that Hatch's fraudulent claim regarding losses from a September 6, 1992 fire voided his homeowner's policy, precluding coverage for Tanko's injury claim against him from an unrelated fire incident on October 11, 1992. Northern Security appeals the superior court's grant of Tanko's motion for summary judgment, arguing that under the plain meaning of the relevant provisions, the policy was voided by Hatch's fraudulent claim. We affirm.

On September 6, 1992, a fire occurred at Hatch's Williamstown home, and Hatch alleged the fire was accidental in a sworn proof of loss submitted to his insurance carrier, Northern Security. It is undisputed that Hatch's sworn claim was false and fraudulent. On December 7, 1993, Hatch was convicted of first-degree arson for the September 6, 1992 fire, and that conviction was upheld on appeal.

This appeal arises from an unrelated incident. On October 11, 1992, Tanko, while a guest at Hatch's home, was injured by an allegedly defective stove. She filed a claim with Northern Security against Hatch's homeowner's policy, the same policy for which Hatch filed the fraudulent proof of loss. After Hatch's conviction, Northern Security brought this action for a judicial declaration that it did not have to pay the Tanko claim because the policy was voided by Hatch's fraudulent fire claim.[1] The superior court concluded that the policy was not voided by Hatch's fraudulent claim and ruled that Tanko's claim was covered.

The issue on appeal is whether the insured's fraudulent presentation of a claim on a homeowner's policy voids the entire policy so as to preclude coverage for a later unrelated claim of an innocent third party. Northern Security argues that Hatch's policy was void as of September 6, 1992. Tanko maintains the policy is not void, was never cancelled prior to the date of her injuries, and that she may recover against it.[2]

The dispute centers on the meaning of language in the homeowner's insurance policy relating to concealment or fraud and to cancellation. Under a heading of "Sections I and II — Conditions," the relevant provisions state:

2. **Concealment or Fraud.** We do not provide coverage for an **insured** who, whether before or after a loss, has:
   a. intentionally concealed or misrepresented any material fact or circumstance;
   b. engaged in fraudulent conduct; or
   c. made false statements;
   relating to this insurance.

   . . .

---

[1] Northern Security also sought a declaration that it did not have to pay Hatch's fire claim. The trial court issued a declaratory judgment to that effect. Hatch has not appealed that judgment or participated in this appeal.

[2] Tanko also claims that Northern Security waived any claim that the policy was voided by Hatch's fraud. In view of our disposition, we do not reach that argument.

### 5. Cancellation.

. . .

    b. We may cancel this policy only for the reasons stated in this policy by letting you know in writing of the date cancellation takes effect.

. . .

(3) When this policy has been in effect for 60 days or more . . . we may cancel for one or more of the following reasons:

. . .

    (b) fraud or material misrepresentation affecting the policy or in the presentation of a claim, or violation of any provisions of the policy. This can be done by letting you know 45 days before the date cancellation takes effect.

The policy in which these conditions appear contains two coverage sections. Section I covers property damage and has subsections for the dwelling, other structures and personal property. The Hatch fire claim sought payment under this section. Section II covers liability claims against the homeowner and has subsections for personal liability and medical payments. Tanko's claim was filed under this section.

Northern Security contends that Condition 2 on concealment or fraud unambiguously expresses that a violation of the provision voids the whole policy, precluding coverage even as to unrelated third-party claims involving different parts of the policy. Tanko responds that the language of the provision is ambiguous and must be construed strictly against the insurance carrier to limit the loss of coverage to the fraudulent claim or to the coverage section of the policy. Because there is no dispute that Hatch submitted a fraudulent claim and that such a claim provides the insurer the remedy set forth in Condition 2, the question before us is relatively narrow.[3]

Rules for interpreting insurance contracts in Vermont are well established. An insurance policy must be interpreted according to its terms and the evident intent of the parties as expressed in the policy language. *City of Burlington v. National Union Fire Ins. Co.*, 163 Vt.

---

[3]Both parties agree that there are no genuine issues of fact and that summary judgment is appropriate for one of the parties. We agree that the issue is solely one of law. See *City of Burlington v. National Union Fire Ins. Co.*, 163 Vt. 124, 127, 655 A.2d 719, 721 (1994).

124, 127, 655 A.2d 719, 721 (1994). Disputed terms are to be read according to their plain, ordinary and popular meaning. *Id.* at 127-28, 655 A.2d at 721. Any ambiguity in an insurance contract must be construed in favor of the insured. *Garneau v. Curtis & Bedell, Inc.*, 158 Vt. 363, 367, 610 A.2d 132, 134 (1992). The insurer, however, should not be deprived of unambiguous provisions put into a policy for its benefit. See *Peerless Ins. Co. v. Wells*, 154 Vt. 491, 494, 580 A.2d 485, 487 (1990).

There are no easy guidelines for determining whether language in an insurance contract is ambiguous. See *Webb v. United States Fidelity & Guar. Co.*, 158 Vt. 137, 139, 605 A.2d 1344, 1346 (1992). An insurance contract is ambiguous if "it is reasonably or fairly susceptible of different constructions." *Town of Troy v. American Fidelity Co.*, 120 Vt. 410, 418, 143 A.2d 469, 474 (1958). "Equivocation and uncertainty, whether in the significance of the terms used or in the form and construction of sentences, are to be resolved in favor of the insured and against the insurer." *Allen v. Berkshire Mut. Fire Ins. Co.*, 105 Vt. 471, 475, 168 A. 698, 699 (1933).

The trial court found Condition 2 ambiguous because it "could be read as cancelling coverage only for the claim to which the material misrepresentation relates or cancelling the entire policy for a claim with any material misrepresentation," and as a result, adopted the narrower reading, which allowed coverage for the Tanko claim. We agree with this conclusion in light of three additional factors.

First, Northern Security changed the language of Condition 2 to abandon language that previously would have clearly provided for the result it now seeks. Cf. *City of Burlington v. Associated Elec. & Gas Ins. Servs.*, 164 Vt. 218, 223, 669 A.2d 1181, 1184 (1995) (omission of standard phrase in policy indicates insurer intended different result from that which phrase would have produced). The opening phrase of the former version of Condition 2 stated: "The entire policy will be void if, whether before or after a loss, an **insured** has: . . . ." Northern Security claims that the language change was necessary to clarify that the policy is not void as to an innocent co-insured. This claim addresses why Northern Security made the remedy specific to the insured rather than to the policy; it does not explain why Northern Security abandoned the clear term "void" in favor of the vague and incomplete language on coverage.

Second, Northern Security's construction of Condition 2 creates an inconsistency with Condition 5 on cancellation. It is common for ambiguity to arise in the context of different, but related, parts of an

insurance policy. See *Webb*, 158 Vt. at 140, 605 A.2d at 1346. Condition 5 allows Northern Security to cancel the policy for many of the grounds covered in Condition 2. If we accept Northern Security's argument, Condition 5 creates an authorization in cases like this to cancel a void contract, an illusory and unnecessary act. We see no reason why the policy would have Condition 5b(3)(b), allowing cancellation for fraud or material misrepresentation in the presentation of a claim, if Northern Security's construction of Condition 2 were correct.

Northern Security's answer to the inconsistency is that the remedies have different purposes: Condition 5 sets out a clear nonjudicial procedure, with notice to the insured, while implementation of Condition 2 requires a judicial rescission determination. Nothing in the policy supports these distinctions. Northern Security could have notified Hatch that it considered the policy void and refused to defend or pay, leaving it up to Hatch or Tanko to initiate litigation. Further, it can clarify its rights under a cancellation by initiating a declaratory judgment action as here. Nothing in the purpose or implementation of these conditions explains how the cancellation provision for fraud and misrepresentation in presentation of a claim has any purpose if Condition 2 is read as Northern Security urges.[4]

Third, by an affidavit of a policy analyst of the Vermont Department of Banking, Insurance and Securities attached to her motion for summary judgment, Tanko showed that the ambiguity caused by the coverage language of Condition 2 and the presence of Condition 5 was intentional because the Department took the position that Vermont insurance law did not authorize a voiding of the policy for post-application fraud. We have allowed limited use of extrinsic evidence in determining whether policy language is ambiguous. See *Simpson v. State Mut. Life Assurance Co. of America*, 135 Vt. 554, 556-57, 382 A.2d 198, 200 (1977) (court may use standard works such as dictionaries to aid interpretation of ambiguous insurance contracts). We believe this evidence fits within that authorization as "circumstances surrounding the making of the agreement." *Isbrandtsen v. North Branch Corp.*, 150 Vt. 575, 579, 556 A.2d 81, 84 (1988).

We recognize, as Northern Security forcefully argues, that the majority of decisions have given effect to concealment and fraud

---

[4] Northern Security argues that Condition 2 has no meaning or purpose if cancellation under Condition 5 is required. We disagree. Condition 2 gives the insurer the right not to pay the fraudulent claim, and related claims under the policy, without cancellation under Condition 5.

conditions in policies to void the entire policy. We do not find those decisions determinative here. The concealment and fraud provision in many of these cases contains language that specifies that the whole policy is voided by an insured who violates the provision. See, e.g., *Sales v. State Farm Fire & Cas. Co.*, 849 F.2d 1383, 1385 (11th Cir. 1988) ("This entire policy shall be void"); *G & M Auto Supply, Inc. v. American Fidelity Ins. Co.*, 1990 WL 483668, at 2 (D. Conn. Oct. 11, 1990) (unpublished mem.) ("This entire policy shall be void"); *Allstate Ins. Co. v. Priga*, 810 F. Supp. 373, 376 (D. Conn. 1992) ("This policy is void"); *American Employers' Ins. Co. v. Taylor*, 476 So. 2d 281, 282 (Fla. Dist. Ct. App. 1985) ("This policy is void"); *Astoria Quality Drugs, Inc. v. United Pacific Ins. Co.*, 557 N.Y.S.2d 339, 340 (App. Div. 1990) (Asch, J., dissenting) ("This policy is void"); *Short v. Oklahoma Farmers' Union Ins. Co.*, 619 P.2d 588, 589 (Okla. 1980) ("This entire policy shall be void"); *Mutual of Enumclaw Ins. Co. v. Cox*, 757 P.2d 499, 501 (Wash. 1988) (en banc) ("This entire policy is void"). As discussed above, the Northern Security policy does not contain this clear language.

The remaining decisions do not consider whether the condition is ambiguous, or they respond to a different ambiguity argument. See, e.g., *Perry v. State Farm Fire & Cas. Co.*, 734 F.2d 1441, 1444 (11th Cir. 1984); *Cummings v. Farmers' Ins. Exch.*, 249 Cal. Rptr. 568, 571 (Ct. App. 1988); *Smith v. State Farm Fire & Cas. Co.*, 426 S.E.2d 457, 459 (N.C. Ct. App. 1993); *Callaway v. Sublimity Ins. Co.*, 858 P.2d 888, 888 (Or. Ct. App. 1993); *Longobardi v. Chubb Ins. Co.*, 582 A.2d 1257, 1258 (N.J. 1990); *Miracle Sound, Inc. v. New York Property Ins. Underwriting Ass'n*, 564 N.Y.S.2d 346, 348 (App. Div. 1991) (mem.). None of these cases addresses the potential inconsistency between a fraud and concealment provision and a cancellation provision.

Finally, Northern Security makes a number of policy arguments why judicial rescission of the policy is the appropriate remedy when an insured files a false claim. Tanko, on the other hand, argues that it would be unfair for her to be unable to collect on her claim because of the unrelated misconduct of Hatch. However compelling these policy arguments are, we stress that it is our duty to enforce the insurance agreement made and not rewrite it on behalf of one or both of the parties. See *Associated Elec. & Gas Ins. Servs.*, 164 Vt. at 222, 669 A.2d at 1183.

For the reasons stated above, we find Condition 2 to be ambiguous and construe it in favor of the claimant to allow coverage for her claim. Tanko was properly awarded summary judgment.

*Affirmed.*