**James V. ATKINSON, Plaintiff,**

v.

**TOWN OF WESTMORE, Defendant,**

v.

**EMC Insurance Companies, Third-party Defendant.**

No. 2:97–CV–226.

United States District Court, D. Vermont.

Jan. 28, 1999.

---

David Bruce Borsykowsky, Paul, Frank & Collins, Inc., Burlington, VT, for James Atkinson.

John F. Evers, Langrock, Sperry & Wool, Middlebury, VT, for Town of Westmore.

David A. Barra, Hill, Unsworth, Barra & Bowles, Essex Junction, VT, for EMC Insurance Companies.

## OPINION AND ORDER

SESSIONS, District Judge.

In this suit against the Town of Westmore ("Town") alleging negligence in the maintenance and operation of a public swimming area along the northwestern shore of Lake Willoughby, the Town has moved for summary judgment, claiming that it is protected from suit under the doctrine of municipal immunity. Plaintiff James Atkinson has cross-moved for sum-

mary judgment on the same issue. Third-party defendant EMC Insurance Companies ("EMC") also seeks summary judgment, asserting that it has no duty to defend or indemnify the Town in connection with Atkinson's claim. The Town in turn has cross-moved for summary judgment against EMC. For the reasons that follow, the Town's motion for summary judgment on immunity is denied; Atkinson's cross-motion is granted. EMC's motion for summary judgment on the duty to defend is denied; the Town's cross-motion is granted.

### Factual Background

For purposes of these motions, the following facts are undisputed. In July 1994, Plaintiff James Atkinson sustained severe injury while swimming at a Lake Willoughby beach in the Town of Westmore. The Town had acquired land adjacent to Lake Willoughby in 1978, which it developed as a beach and swimming area. Since it acquired the land the Town has made various improvements to the swimming area, including clearing an area for parking, posting signs, setting out buoys to designate a safe swimming area, and creating restroom facilities. The Town performs routine maintenance at the beach, and opens the beach to the public between the hours of sunrise and 11:00 p.m. daily. The Town does not employ a lifeguard, nor does it charge a fee for use of the beach.

EMC issued a general liability policy (Number 8D9-72-85) to the Town, effective from December 18, 1993 to December 18, 1994. The general liability policy contains a Governmental Subdivisions Endorsement, which states that certain enumerated exposures of the insured are not covered unless specifically declared in the policy schedule, showing an applicable premium. Paragraph "f" of the Endorsement lists "Lakes or reservoirs—existence hazard." [1]

---

**1.** The applicable text of the Governmental Subdivisions Endorsement reads as follows:

**Exposures Insured Only By Specific Declaration**

A "Swim Project" was declared on the general liability schedule, with an applicable premium of $175.00. Listed as additional insureds were the sponsors of the swim project: The Westmore Association, Westmore Community Church, and the Westmore Ladies Aide, Westmore, Vermont. The swim project took place from August 1, 1994 to August 20, 1994, and involved children's swimming lessons. Atkinson, an adult, was not a participant in the swim project, and coverage is not sought under this provision.

EMC also issued a commercial umbrella policy (Number 8B9–72–85) to the Town, effective from December 18, 1993 to December 18, 1994. The commercial umbrella policy contains a Governmental Subdivision Hazards Restrictive Endorsement, which states that the umbrella policy does not apply to personal or bodily injury arising out of the ownership, existence, maintenance, or use of lakes unless coverage is provided by a primary policy. The umbrella policy's coverage is no broader than the coverage of the primary policy.[2]

### Discussion

Summary judgment is appropriate when there is no genuine issue as to any material fact, and the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56(c); *Alexander & Alexander Services, Inc. v. These Certain Underwriters at Lloyd's, London, England,* 136 F.3d 82, 86 (2d Cir.1998) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Jurisdiction of this matter is based on diversity, 28 U.S.C. § 1332(a)(1), and the Court applies Vermont law to the substantive issues. *See Erie R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

### I. *Municipal immunity*

█ The Town contends that it is immune from suit under the doctrine of sovereign immunity. Atkinson asserts that sovereign immunity as applied to municipal corporations is limited to strictly governmental functions, that operating a swimming area is not one of those functions, and therefore the Town is not immune from suit.

█ In Vermont, municipalities enjoy a limited protection from suit under common law doctrine dating to the mid 1800s. *Hillerby v. Town of Colchester,* 706 A.2d 446, 447 (Vt.1997) (citing *Baxter v. Winooski Turnpike Co.,* 22 Vt. 114, 123 (1849)). Under this doctrine of municipal immunity, municipalities have been held liable "only where the negligent act arises out of a duty that is proprietary in nature as opposed to governmental." *Hillerby,* 706 A.2d at 447. The doctrine has been widely criticized, *see, e.g., Indian Towing Co. v. United States,* 350 U.S. 61, 65, 76 S.Ct. 122, 100 L.Ed. 48 (1955) (governmental-nongovernmental distinction a quagmire, producing disharmonious decisions from application of inherently unsound rule of law), and has been abrogated in many jurisdictions. *Hillerby,* 706 A.2d at 454 (Johnson, J., dissenting) (citing cases). Nevertheless, in 1997 the Vermont Supreme Court, while declining to endorse the distinction, refused to abolish it. *Id.* at 449.

We agree that the insurance does not apply to the following exposures of the insured, unless such exposure is specifically declared in the policy schedule and the applicable premium is shown.
\*\*\*
f) Lakes or reservoirs—existence hazard Paper 36, Ex. B.

2. The applicable text of the Endorsement reads as follows:
   2. This Policy does not apply to "bodily injury", "personal · injury" or "property damage" arising out of the following unless coverage is provided by a "Primary" Policy described in "Schedule A". This Policy will not be broader than such "Primary" Coverage.
   A. The ownership, existence, maintenance or use of swimming pools, bathing beaches or any operations in connection with these.
   \*\*\*
   H. The ownership, existence, maintenance, or use of: ... (5) lakes or reservoirs. Paper 36, Ex. H.

The Vermont Supreme Court has advised that municipal immunity "should be limited to those activities of the municipalities so necessary and so vital to the inhabitants that the municipality ought to be immune from liability for the methods it uses in performing such functions." *Roman Catholic Diocese v. City of Winooski Hous. Auth.*, 137 Vt. 517, 519, 408 A.2d 649, 650 (1979). Because the doctrine of immunity is in derogation of the right of an individual to recover for an injury, "[e]xtension of immunity ought to be granted only on the basis of strong policy reasons." *Marshall v. Town of Brattleboro*, 121 Vt. 417, 424, 160 A.2d 762, 767 (1960). In ruling that construction of housing for the elderly was a proprietary activity, the Court stated: "[h]owever beneficial the activity, its nature does not so partake of the critical essence of the basic concerns of government as to require that individuals suffering damage and harm from its construction must, for the good of the public, forego all remedy." *Roman Catholic Diocese*, 137 Vt. at 520, 408 A.2d at 651. Similarly, operation of a rope tow at a ski area operated by the town's recreation department was deemed proprietary:

> [t]he policy that favors the construction of recreational areas by municipalities for its citizens is not so vital to the community, so essential a municipal operation, as to require that immunity from liability for carelessness be conferred willy-nilly on any and all activities the municipality may carry on within the confines of the recreation area.

*Marshall*, 121 Vt. at 425, 160 A.2d at 767.

The Town argues that the test for determining the proprietary or governmental nature of an activity is "whether the act performed is public in character and performed as an agent of the state in furtherance of general law for the interest of the public at large, or whether it is performed primarily for the benefit of those within the corporate limits of the municipality." *Town of Stockbridge v. State Highway Bd.*, 125 Vt. 366, 370, 216 A.2d 44, 47 (1965).

In *Stockbridge v. State Highway Board*, the Court ruled that a certain building was held by the town in its proprietary capacity, and thus the town was entitled to compensation for its condemnation. But a scant five years earlier this public vs. corporate benefit test was rejected by the Court as not "persuasive for justifying immunity." *Marshall*, 121 Vt. at 425, 160 A.2d at 767. *Hillerby*, the Vermont Supreme Court's most recent discussion of the governmental-proprietary distinction, does not endorse or disavow either test. *See Hillerby*, 706 A.2d at 447, 448 (citing to *Marshall*, *Roman Catholic Diocese*, and *Stockbridge v. State Highway Bd.*).

Upon closer examination of the cases, it is possible to harmonize this apparent contradiction in their holdings, however. The *Stockbridge* analysis assists a determination that an act is proprietary, when it can be found that it has no relation to public health or the police power, when there is no evidence that the property is held for the public at large, or that the public receives benefit from it, or that the town is acting as agent for the state. *Stockbridge v. State Highway Bd.*, 125 Vt. at 370–71, 216 A.2d at 47–48. If, however, there is evidence that the public does derive benefit from the activity, a finding that the activity is governmental in nature does not automatically result. The activity must in addition be "vital to the community, ... [an] essential ... municipal operation." *Marshall*, 121 Vt. at 425, 160 A.2d at 767. *See also Roman Catholic Diocese*, 137 Vt. at 519, 408 A.2d at 650.

The operation and maintenance of a public swimming area, although undoubtedly conferring a public benefit, is not so vital to the community as to justify immunity from liability for negligence. The activity is proprietary rather than governmental in nature, and thus immunity for tort liability does not attach. Although the Vermont Supreme Court did hold in *Lemieux v. City of St. Albans*, 112 Vt. 512, 516, 28 A.2d 373, 374 (1942), *overruled in part by Marshall v. Town of Brattleboro*, 121

Vt. 417, 160 A.2d 762 (1960), that construction of a public playground was a governmental activity, the case was subsequently confined strictly to its facts, *Marshall,* 121 Vt. at 425, 160 A.2d at 767, and is not persuasive authority today that operation or maintenance of a recreation area is governmental.

The Town's motion for summary judgment on the ground of municipal immunity from suit (paper 38) is therefore DENIED; Atkinson's cross-motion for summary judgment (paper 46) is GRANTED.

## II. *Duty to defend and indemnify*

EMC has asserted that it has no duty to defend or indemnify the Town in connection with Atkinson's claims. It argues that neither the general liability policy nor the commercial umbrella policy provide coverage for the accident, and that it is entitled to judgment as a matter of law.

The Town has asserted that as a matter of law EMC is bound to defend and indemnify it because Atkinson's claims do not fall within the policies' exclusions. It argues that the term "existence hazard" is ambiguous, and that ambiguity must be resolved in favor of coverage.

An insurer's duty to defend is broader than its duty to indemnify. *City of Burlington v. National Union Fire Ins. Co.,* 163 Vt. 124, 127, 655 A.2d 719, 721 (1994). The insurer's duty to defend is determined by comparing the allegations in the complaint to the terms of coverage in the policy. *Id.* The duty to defend is triggered if any claim against the insured potentially comes within the policy's coverage. *Garneau v. Curtis & Bedell, Inc.,* 158 Vt. 363, 366, 610 A.2d 132, 134 (1992). Only if there is no possible factual or legal basis on which the insurer might be obligated to indemnify will there be no duty to defend. *Id.* at 366–67, 610 A.2d at 134.

The policy must be construed according to its terms and the evident intent of the parties as expressed in the policy language. *Burlington v. National Union*

*Fire,* 163 Vt. at 127, 655 A.2d at 721. This principle avoids "binding insurers to coverage that the parties did not reasonably contemplate." *State Farm Mut. Auto. Ins. Co. v. Roberts,* 166 Vt. 452, 461, 697 A.2d 667, 672 (1997). In determining the reasonable expectations of parties to an insurance contract, the Court "must consider the policy in its entirety with an eye toward its general purpose." *Id.* Policies should be interpreted to favor complete coverage. *Cooperative Fire Ins. Ass'n v. Bizon,* 166 Vt. 326, 333, 693 A.2d 722, 727 (1997) (citing *Gerrish Corp. v. Universal Underwriters Ins. Co.,* 947 F.2d 1023, 1029–30 (2d Cir.1991)).

Disputed terms in an insurance policy should be accorded their "plain, ordinary and popular meaning." *Burlington v. National Union Fire,* 163 Vt. at 127–28, 655 A.2d at 721. Principles of fairness demand, however, that any ambiguity in the language of the policy be resolved in favor of the insured. *City of Burlington v. Associated Elec. & Gas Ins. Services, Ltd.,* 164 Vt. 218, 221, 669 A.2d 1181, 1183 (1995); *Garneau,* 158 Vt. at 367, 610 A.2d at 134. Language in an insurance contract is ambiguous if "it is reasonably or fairly susceptible of different constructions." *Northern Sec. Ins., Co. v. Hatch,* 165 Vt. 383, 386, 683 A.2d 392, 395 (1996). Extrinsic evidence may be introduced to aid in determining whether policy language is ambiguous. *Id.,* 165 Vt. at 387, 683 A.2d at 395.

At issue is whether Atkinson's claim falls within the provision of the comprehensive general liability policy's Governmental Subdivisions Endorsement, which excludes from coverage the Town's "exposure" for "lakes or reservoirs—existence hazard." The complaint alleges that the Town owns land along Lake Willoughby, which it operates as a beach swimming area, open to the public. It states that the Town has marked out a swimming area within Lake Willoughby adjacent to the beach area. It further alleges that there

were sand bars within the designated swimming area which reduced the water depth to a level unsafe for ordinary swimming. It claims that the Town negligently failed either to correct the unsafe water depth or to warn swimmers of this condition.

"Existence hazard" is not defined in the policy, nor has it been construed in Vermont case law. The Governmental Subdivisions Endorsement excludes from coverage various "exposures." Some "exposures" are excluded from coverage entirely unless specifically declared, such as amusement parks, golf courses, ski facilities, schools or colleges, or zoos. In contrast, the "existence hazard" of lakes or reservoirs, along with dams, levees or dikes, is not covered, unless specifically declared. In further contrast, the "existence hazard" plus the "maintenance hazard" of streets, roads, highways or bridges is not covered unless specifically declared. The Endorsement itself thus distinguishes between an "existence hazard" and a "maintenance hazard."

If the "existence hazard" exclusion is given its plain, ordinary and popular meaning, it may be translated as excluding coverage for claims that arise out of the fact of or existence of the lake, as opposed to claims that arise out of maintenance associated with the lake. *See, e.g., American Employers Ins. Co. v. Board of County Comm'rs*, 547 F.2d 511, 514 (10th Cir.1976) ("existence" means "on account of," "condition of" or "fact of"). Atkinson's complaint may be read to allege either an unsafe condition of the lake, a claim which would not be covered, or a failure to operate or maintain a designated swimming area safely, a claim which falls outside the policy's exclusion. Because Atkinson's negligent maintenance claim potentially comes within the policy's coverage, the duty to defend is triggered. *Garneau*, 158 Vt. at 366, 610 A.2d at 134.

■ The purpose of comprehensive general liability insurance is to provide protection against liability claims, and policy terms must be interpreted consistently with that purpose, with exclusions strictly construed. *City of Burlington v. Glens Falls Ins. Co.*, 133 Vt. 423, 424, 340 A.2d 89, 90 (1975). The liability policy's insuring agreement obligates EMC to pay all sums incurred as damages because of bodily injury to which the insurance applies, up to the limits of the policy. Such policy language is statutorily mandated, and reflects "a legislative declaration of a public policy favoring complete coverage." *State v. Glens Falls Ins. Co.*, 137 Vt. 313, 320, 404 A.2d 101, 105 (1979); Vt.Stat.Ann. tit. 8 § 4203 (1993). The reasonable expectations of the parties, as evidenced by the policy's language and purpose, thus also favor coverage in this case.

Although the Court finds that the term "existence hazard" can be given a common sense interpretation, the meaning of the Governmental Subdivisions Endorsement exclusion is by no means crystal clear. The conflicting affidavits of Steven Kipp (paper 47) and Lois Schroder (paper 36, ex. E), although somewhat self-serving, attest to the parties' lack of a common understanding of the extent of the Town's liability coverage for lake-related activity. A finding that the term is ambiguous, however, would yield the same result in this case: EMC has a duty to defend this suit.

If the facts at trial demonstrate that the Town was negligent in its operation or maintenance of the swimming area, then, under the terms of the general liability policy, EMC will be obligated to indemnify the Town. The umbrella policy will be triggered if damages exceed the limits of the primary policy. Because there is a factual and legal basis on which EMC may become obligated to indemnify, EMC has a duty to defend under the terms of the policy. Its motion for summary judgment (paper 36) is DENIED. The Town's motion for summary judgment (paper 43) is GRANTED.