819 So.2d 740 (2002)
Ruben FLORES, Petitioner,
v.
ALLSTATE INSURANCE COMPANY, Respondent.
No. SC00-2281.
Supreme Court of Florida.
May 23, 2002.
*742 D. Russell Stahl, Tampa, FL, for Petitioner.
Christopher J. Nicholas and Anthony J. Russo of Butler Burnette Pappas, Tampa, FL, for Respondent.
PARIENTE, J.
We have for review the decision of the Second District Court of Appeal in Flores v. Allstate Insurance Co., 772 So.2d 4, 7 (Fla. 2d DCA 2000), in which the Second District certified a question of great public importance:
DOES AN INSURED LOSE ALL BENEFITS UNDER A DIVISIBLE INSURANCE POLICY WHERE THE INSURED'S FRAUD IS COMMITTED WITH RESPECT TO ONE PART OF THE POLICY BUT THE APPLICABLE GENERAL FRAUD PROVISION OF THE POLICY PROVIDES THAT FRAUD IN ANY PORTION OF THE POLICY VOIDS THE ENTIRE POLICY?
We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. The specific issue in this case is whether the insured's submission of a fraudulent bill under the personal injury protection ("PIP") portion of an automobile liability policy voided his right to claim uninsured motorist ("UM") benefits under the policy even where no fraud occurred in connection with the UM claim. Because the certified question neither reflects the fact that PIP and UM coverages are involved in this case, nor accurately reflects the actual terms of the policy provision set forth in the automobile liability insurance policy, we rephrase the certified question as follows:
DOES THE SUBMISSION OF A FRAUDULENT BILL UNDER THE PIP PORTION OF A DIVISIBLE AUTOMOBILE LIABILITY POLICY VOID UNINSURED MOTORIST COVERAGE WHERE THE POLICY CONTAINS A GENERAL CONDITION THAT PROVIDES THAT THE INSURER "WILL NOT PROVIDE COVERAGE FOR ANY LOSS THAT OCCURS IN CONNECTION WITH ANY MATERIAL MISREPRESENTATION, FRAUD OR CONCEALMENT OF MATERIAL FACTS, OR IF ANY MATERIAL MISREPRESENTATION OR OMISSION WAS MADE ON THE AUTO INSURANCE APPLICATION"?

FACTS
Ruben Flores ("Flores") and his son Bobby Flores were passengers in a vehicle owed by Antonio Meza ("Meza") and operated by Norma Flores, the wife of Flores and mother of Bobby Flores. The vehicle was involved in an accident in which Flores sustained facial injuries upon impacting the front windshield. As a result of the accident, the Flores family, as additional insureds, filed a four-count complaint against Meza's insurer, Allstate Insurance Company ("Allstate") for UM coverage.[1]
*743 The Allstate policy is a divisible automobile insurance policy with separate coverages and separate premiums charged for PIP and UM coverage.[2] The policy provides that the policy limit for PIP insurance was an aggregate total of "$10,000 each person." The policy limit for UM coverage is "$100,000 each person $300,000 each accident."
The policy provision at issue in this case appears under the section entitled "General," and provides as follows:
Fraud or Misrepresentation
Your policy was issued in reliance on the information you provided on your Auto Insurance Application concerning autos and persons insured by the policy. Allstate will not provide coverage for any loss which occurs in connection with any material misrepresentation, fraud, or concealment of material facts, or if any material misrepresentation or omission was made on your Auto Insurance Application.
In its answer, Allstate raised affirmative defenses, including that Flores failed to use an operational and available seatbelt and that Flores perpetrated fraud and misrepresentation in his PIP claims by presenting altered physician and prescription billing statements to Allstate. Flores moved for summary judgment, arguing that Allstate's fraud and misrepresentation affirmative defense was legally insufficient as a defense to a UM claim because the fraud related only to the claim for PIP benefits. The trial court denied Flores' motion.
To support its affirmative defense, Allstate presented evidence at trial that Flores, who worked in a pharmacy, submitted three claims for reimbursement under the PIP coverage for three prescription bills that Flores received at no cost from his employer. The amounts of the three bills were $5, $10 and $27.50. Allstate also presented evidence of a physician's bill that had been altered from $30 to $130 by the insertion of a "1."
The jury verdict form contained special interrogatories. As to the fraud defense, the verdict contained the following question: "Did the Plaintiff, RUBEN FLORES, make a material misrepresentation, false statement, commit fraud, or otherwise conceal material facts in connection with his claim against the Defendant, ALLSTATE INSURANCE COMPANY? (YES or NO)." The jury checked "YES". Regarding Allstate's affirmative defense that Flores failed to wear a seat belt, the jury also answered "YES" to a special interrogatory that there was "negligence on the part of the Plaintiff, RUBEN FLORES, in failing to wear a seat belt, which was a legal cause of loss, injury or damage to RUBEN FLORES." The jury found that Flores' negligence was "100%" the cause of his damages.[3]
The trial court entered final judgment in favor of Allstate and taxed costs against Flores. On appeal, the Second District framed the "core issue" as "whether evidence of Ruben Flores' fraudulent acts was sufficiently egregious to justify trial by jury with respect to whether Allstate was relieved of paying any sums under the policy." Flores, 772 So.2d at 5. In affirming *744 the judgment for Allstate, the Second District reasoned that the "law in Florida is clear that a policy provision which voids the insurance policy for misrepresentation of a material fact is given full force and effect." Id. at 6.

ANALYSIS
The issue in this case is whether Flores forfeited his right to make a claim for UM benefits under the Allstate policy after he submitted fraudulent bills for reimbursement under the PIP benefits provision of the policy. We begin our analysis with the general principles governing interpretations of insurance policies.
As a fundamental proposition, where the language in an insurance policy is subject to differing interpretations, the policy language "should be construed liberally in favor of the insured and strictly against the insurer." State Farm Fire & Cas. Co. v. CTC Dev. Corp., 720 So.2d 1072, 1076 (Fla.1998). See Auto-Owners Ins. Co. v. Anderson, 756 So.2d 29, 34 (Fla.2000). Moreover, it is axiomatic that "[i]f the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage, the insurance policy is ambiguous." Auto-Owners, 756 So.2d at 34. Policy provisions that tend to limit or avoid liability are interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy, and exclusions to coverage are construed even more strictly against the insurer than coverage clauses. See id. With these basic principles in mind, we consider the general law regarding both PIP and UM coverage.
PIP insurance is a statutorily required coverage for those policies complying with the security requirement of the Florida Motor Vehicle No-Fault law. See § 627.736(1), Fla. Stat. (1997); see also Allstate Ins. Co. v. Rudnick, 761 So.2d 289, 291 (Fla.2000). The purpose of PIP benefits is to provide up to $10,000 for medical bills and lost wages without regard to fault. See, e.g., §§ 627.731, 627.736, Fla. Stat (1997). PIP benefits are an integral part of the no-fault statutory scheme.
Separate and apart from the purpose of requiring insurers to provide PIP benefits for their insureds who are injured in automobile accidents, insurers issuing motor vehicle policies in Florida also are mandated by statute to offer UM coverage unless the insured has expressly rejected the coverage. See generally § 627.727, Fla. Stat. (1997). UM coverage serves a different purpose than no-fault benefits and is intended to protect persons who are injured as a result of negligence by uninsured motorists.
In Mullis v. State Farm Mutual Automobile Insurance Co., 252 So.2d 229, 237-38 (Fla.1971), we explained that "uninsured motorist coverage ... is statutorily intended to provide the reciprocal or mutual equivalent of automobile liability coverage prescribed by the Financial Responsibility Law." Further, as we elaborated in Allstate Insurance Co. v. Boynton, 486 So.2d 552, 557 (Fla.1986):
The legislature wisely enacted a scheme whereby a motorist may obtain a limited form of insurance coverage for the uninsured motorist, by requiring that every insurer doing business in this state offer and make available to its automobile liability policyholders UM coverage in an amount equal to the policyholder's automobile liability insurance. The policyholder pays an additional premium for such coverage.
More recently, this Court again emphasized that the reason insurers are statutorily required to offer UM coverage to the insured is to protect individuals "who are injured or damaged by other *745 motorists who in turn are not insured and cannot make whole the injured party. The statute is designed for the protection of injured persons, not for the benefit of insurance companies or motorists who cause damage to others." Young v. Progressive Southeastern Ins. Co., 753 So.2d 80, 83 (Fla.2000) (citing Brown v. Progressive Mut. Ins. Co., 249 So.2d 429, 430 (Fla. 1971)).
Regarding attempts by insurers to limit UM coverage, we explained in Salas v. Liberty Mutual Fire Insurance Co., 272 So.2d 1, 5 (Fla.1972), that
the intention of the Legislature, as mirrored by the decisions of this Court, is plain to provide for the broad protection of the citizens of this State against uninsured motorists. As a creature of statute rather than a matter for contemplation of the parties in creating insurance policies, the uninsured motorist protection is not susceptible to the attempts of the insurer to limit or negate that protection.
(Emphasis supplied.) "Because the uninsured motorist statute was enacted to provide relief to innocent persons who are injured through the negligence of an uninsured motorist; it is not to be `whittled away' by exclusions and exceptions." Young, 753 So.2d at 83.
The principles articulated in Salas and reiterated in Young do not mean that there is a blanket prohibition against an insurance policy containing general conditions affecting coverage or exclusions on coverage as long as the limitation is consistent with the purposes of the UM statute. See, e.g., Carguillo v. State Farm Mut. Auto. Ins. Co., 529 So.2d 276 (Fla.1988). However, these principles must be kept in mind when considering restrictions on statutorily mandated coverage because of the courts' additional obligation to invalidate exclusions on coverage that are inconsistent with the purpose of the UM statute.
In light of the overarching purposes behind the statutory protection, conditions or exclusions must be carefully scrutinized first to determine whether the condition or exclusion unambiguously excludes or limits coverage, and then to determine, if so, whether enforcement of a specific provision would be contrary to the purpose of the uninsured motorist statute. Furthermore, because both PIP and UM are statutorily mandated coverages, analogies to cases interpreting coverages that are not statutorily mandated, such as provisions in fire, life, and property insurance policies, may not necessarily be illuminating in guiding our analysis.
The Second District in this case cited two cases from this Court, Hartford Fire Insurance Co. v. Hollis, 64 Fla. 89, 59 So. 785 (1912) (Hollis II), and National Union Fire Insurance Co. v. Cubberly, 68 Fla. 253, 67 So. 133 (1914), for the "rule that an insurance policy may be severable but not when there are misrepresentations and fraud." Flores, 772 So.2d at 6-7. However, our review of these cases reveals that not only did Hollis and Cubberly involve fire insurance policies with different policy provisions than the one at issue here, but the statements made in both cases constitute dicta because neither case involved fraud or misrepresentation by the insured.
The facts in Hollis II can be gleaned by piecing together a prior opinion of the Court in Hartford Fire Insurance Co. v. Hollis, 58 Fla. 268, 50 So. 985 (1909) (Hollis I), and the subsequent opinion in Hollis II, 64 Fla. 89, 59 So. 785 (1912). For a single premium of $41.25, a fire insurance policy referred to as "a combination mercantile and building policy," Hollis I, 50 So. at 990, was issued to insure the plaintiff *746 against loss, covering $1000 on stock of merchandise and $250 on the building. See Hollis II, 59 So. at 786.
The insured brought an action on the policy and among the several defenses raised by the insurer was that mortgage foreclosure proceedings had commenced and that the fire had occurred on the day set for the judicial sale. See Hollis I, 50 So. at 986. The policy contained a provision that the "entire policy ... shall be void ... if, with knowledge of the insured, foreclosure proceedings be commenced or notice given of sale of any property covered by this policy." Hollis I, 50 So. at 989 (emphasis supplied).
In Hollis II, the Court discussed whether a breach of this policy provision would void the insured's entire claim or only a portion of the claim, stating:
While there is a diversity of judicial opinion as to the divisibility of policies of insurance, the doctrine seems to be that, in the absence of misrepresentations and fraud, where a fire insurance policy covers different classes of property, each of which is separately valued and is insured for a distinct amount, the contract is severable, and a breach of the contract of insurance, that relates to and directly affects only one of the classes of the property insured, does not invalidate the policy as to the other class of property, unless it appears that such was the intention of the parties; and an intent that the policy shall be indivisible is not shown by the facts that the premium for all the classes of property insured is payable or paid in gross, and the policy provides that the entire policy shall be void if the contract is violated in any one of several stated particulars by the insured.
59 So. at 785 (emphasis supplied). However, the Court concluded that there was no indication that the parties intended the policy to be indivisible, and there was no indication of misrepresentation or fraud. See id. at 786. Therefore, because no fraud or misrepresentation was alleged in Hollis II, the statement on this issue as it relates to fire insurance policies is dicta.
Cubberly also involved a fire insurance policy in which the Court determined that the policy was divisible. 67 So. at 135. In Cubberly, the insured breached a condition of the policy by procuring another insurance policy on a part of the covered property. See id. at 134. In determining that the policy was divisible, the Court embraced the rule that
[w]here the property covered by a policy of insurance consists of different kinds of property, such as realty and personalty, or of different items, such as separate buildings or different articles of personal property, and the different kinds of articles of property are separately valued, or are insured for separate amounts, the contract is divisible, and a breach of warranty or condition as to one kind or class of property will not affect the insurance on the remainder of the property.
Id. (quoting 2 Roger W. Cooley, Briefs on the Law of Insurance 1896 (1905)).
In elaborating on the flexibility of the rule, even in light of a policy provision that actually states that the entire policy shall be void upon breach of a condition, the Court further stated:
Though in some jurisdictions the fact that the consideration for the policy is entire has led the courts to declare the contract entire, an examination of the cases justifies the statement that the rule established by the weight of authority is that, if the policy covers separate classes or items of property, separately valued and insured for separate amounts, the contract is divisible, and a breach of warranty or condition which *747 affects only one of the classes or items covered will not avoid the insurance on the other classes or items. The fact that the policy contains a declaration that the entire policy shall be void on a breach of condition does not change the rule. Reason and justice require, however, that the rule should be modified when the various classes of property are so situated in respect to each other that the risk is substantially the same on all, and in such case a breach of condition or warranty which increases the risk on one class or item of the property insured should forfeit the whole insurance.

Cubberly, 67 So. at 134-35 (quoting Cooley, supra, at 1925) (emphasis supplied). Thus, Cubberly did not establish an unbending and inflexible rule requiring the voiding of the entire policy for a breach of a condition in a divisible insurance policy. Rather, the Court in Cubberly held that a declaration voiding an entire policy based upon a breach of a condition will be enforced only where the risk is substantially the same on all of the various categories of property insured. Id. Because neither Hollis nor Cubberly involved a claim of fraud or misrepresentation, neither case discussed under what circumstances fraud or misrepresentation would void the entire policy.
In contrast to Hollis and Cubberly, in American Insurance Co. v. Robinson, 120 Fla. 674, 163 So. 17, 20 (1935), another case relied upon by the Second District in this case, the Court was faced with a fire insurance policy that contained "a specific provision voiding the policy, `in case of any fraud or false swearing by the insured touching any matter relating to this insurance, or the subject thereof, whether before or after a loss.'" (Emphasis supplied.) The Court construed this provision to mean that "if after loss any false answer as to any matter or fact material to the inquiry is knowingly and willfully made, it is fraudulent, and the intention to deceive the insurer is necessarily implied." Id. Nevertheless, the Court also held that "the burden of proof should be upon the insurance company to show that, when examined, the insured knowingly and willfully made a false answer concerning some matter of fact as to which he knew or was apprised was material to the inquiry being made by the insurance company." Id. at 21. The Court remanded the case for a new trial to allow the insurance company to raise as an affirmative defense the insured's alleged fraud. Thus, Robinson involved a provision that specifically allowed for voiding of a fire insurance policy in connection with fraud before or after a loss. However, that case did not directly address the effect of such a provision on a severable insurance policy and certainly did not address the effect of such a provision in the context of statutorily mandated coverage.
We similarly conclude that the two Third District cases cited by the Second DistrictSchneer v. Allstate Indemnity Co., 767 So.2d 485 (Fla. 3d DCA 2000), and Wong Ken v. State Farm Fire & Casualty Co., 685 So.2d 1002 (Fla. 3d DCA 1997), do not address the issue presented in this case because the policies in both of these cases were homeowners' policies containing clear language that the policy would be "void" for fraud or misrepresentation whether the fraud occurred "before or after the loss." Thus the precise issue presented in this casewhether, under the terms of this insurance policy, the submission by an insured of a fraudulent claim under the PIP portion of the Allstate policy permitted Allstate to deny UM benefits claimed under the same policyis one of first impression in our State.

THIS CASE
The policy provision upon which Allstate relies is contained in the general *748 conditions portion of the policy, and provides as follows:
Fraud or Misrepresentation
Allstate will not provide coverage for any loss which occurs in connection with any material misrepresentation, fraud, or concealment of material facts, or if any material misrepresentation or omission was made on your Auto Insurance Application.
We first note that at no time did Allstate seek to cancel the policy pursuant to sections 627.728(2)(b) and (3)(a), Florida Statutes (1997), which allows a notice of cancellation of a policy based upon "material misrepresentation or fraud." In fact, Allstate specifically extended UM coverage to Bobby Flores, who also was injured in this accident and who made claims for coverage under the UM portion of the policy. The question then becomes whether the denial of all coverage to Flores based on his fraudulent submission of PIP bills is contemplated by the provisions of this automobile insurance policy.[4]
To answer this question, we turn to the actual language of the policy. The first sentence of the Allstate policy provision relates only to information in the application of insurance. ("Your policy was issued in reliance on the information you provided on your Auto Insurance Application concerning autos and persons insured by the policy."). In addition, a portion of the second sentence also relates only to a misrepresentation in the application of insurance. ("Allstate will not provide coverage... if any material misrepresentation or omission was made on your Auto Insurance Application").
Thus, the sole section that Allstate relies upon to support its position that fraud in the submission of a PIP bill may void UM coverage is the first portion of the second sentence. Rather than a provision that states that fraud before or after a loss voids the entire policy, this provision states only that "Allstate will not provide coverage for any loss which occurs in connection with any material misrepresentation, fraud, or concealment of material facts." (Emphasis supplied.)
Allstate acknowledges that there are different versions of anti-fraud provisions that can be divided into three categories: (1) those that state that any misrepresentation will void the entire policy; (2) those that state that any misrepresentation as to a particular coverage voids coverage under that part; and (3) those that neither reference the "entire policy" nor "this coverage part." Allstate acknowledges its provision falls into the last category. Notably, however, the overwhelming number of the reported cases that have upheld the voiding of an entire policy involve policies that contain clearly worded fraud provisions providing for the voiding of the entire policy, with many policies providing for the voiding of the policy if the fraud occurs before or after the loss.[5] The presence of *749 clauses such as "this policy is void," or "the entire policy is void" and the additional reference to "before or after the loss" in many of the out-of state cases may evince an established custom in the insurance industry as to the language used by insurers in drafting such anti-fraud clauses, especially in property insurance policies. See Auto Owners, 756 So.2d at 35. Similarly, each of the cases from this Court cited by the Second DistrictHollis II, Cubberly, and American Insurancecontained clauses that specified that the whole policy was voided.
Although almost all of the out-of-state cases involve either homeowners' policies or property insurance policies, in Cohen v. Auto Club Insurance Association, 463 Mich. 525, 620 N.W.2d 840 (2001), the Michigan Supreme Court did confront the issue of whether the submission of false documentation in connection with a claimant's wage loss claim under the no-fault coverage voided the UM coverage. In that case, however, the policy contained a provision that stated: "This entire Policy is void if an insured person has intentionally concealed or misrepresented any material fact or circumstance relating to: a. this insurance; b. the Application for it; c. or any claim made under it." Id. at 842 (emphasis added). In concluding that the insurer could properly deny UM coverage, the Michigan Supreme Court acknowledged the general principle that exclusions in policies cannot conflict with the mandatory coverage requirements of the no-fault act. However, with regard to the provision in question, the Michigan Supreme Court emphasized that under Michigan law, uninsured motorist coverage was not statutorily required. See id at 843-44. Thus, the specific policy language in the Cohen case, as well as the fact that uninsured motorist coverage is not statutorily required in Michigan, distinguishes Cohen from this case.
In contrast to the cases involving broad anti-fraud provisions, in Northern Security Insurance Co. v. Hatch, 165 Vt. 383, 683 A.2d 392 (1996), the Vermont Supreme Court considered a clause that appeared under the "conditions" section of a homeowners' policy and that stated that the insurer did "not provide coverage for an insured who, whether before or after a loss has: intentionally concealed or misrepresented any material fact or circumstance." Id. at 394. The insurer claimed that the provision voided the entire policy. The Vermont Supreme Court agreed with the trial court, which found the condition was ambiguous because it "could be read as cancelling coverage only for the claim to which the material misrepresentation relates or cancelling the entire policy for a claim with any material misrepresentation." Id. at 395. In distinguishing many of the cases in which the policies were found void, the court noted, as we do here, *750 that many other cases discussed policies that specified the whole policy is voided by an insured who violates the provision. Id. at 396.
Likewise, the Wisconsin Supreme Court in Tempelis v. Aetna Casualty & Surety Co., 169 Wis.2d 1, 485 N.W.2d 217 (1992), held that a clause, which is substantially similar to the clause in this case, is ambiguous. Arising in the context of a fire insurance policy, in Tempelis, the insureds created fraudulent receipts for living expenses and made false statements with regard to their fire insurance. In denying coverage, Aetna relied upon the policy clause that provided: "We do not provide coverage for any insured who has: a. intentionally concealed or misrepresented any material fact or circumstance; b. made false statements or engaged in fraudulent conduct; related to this insurance." Id. at 219. The court determined that this policy language was ambiguous as to the extent to which a material misrepresentation would void coverage:
When read by a reasonable person in the position of the insured, we conclude the policy is reasonably susceptible to more than one construction. A reasonable insured could read the policy in at least one of two different ways: 1) as canceling coverage only for the subsection or element of the claim to which the material misrepresentation relates; or 2) canceling coverage of the entire claim for any material misrepresentation. The policy language is therefore ambiguous.
Id. at 221. Accordingly, the court determined that only the portion of the insurance claim to which the fraud related was void, and coverage should be denied for that portion alone. See id. at 222. The court added:
Although our decision is based on the fact that we conclude that the Tempelises' insurance policy is ambiguous, it is understandable why other courts have simply refused to allow a material misrepresentation that relates to one element of a claim, e.g., additional living expenses, to void coverage of the entire claim. Such an interpretation of an insurance contract could produce extremely harsh results. For example, if an insured had a two million dollar insurance policy, and he or she submitted one fraudulent receipt for a $50 meal, the policy would void coverage of his or her entire insurance claim, including the two million dollar coverage of the home.
Id.
In this case, as in Tempelis and Northern Security, the provision is susceptible to differing reasonable interpretations. First, the general condition in this case is susceptible to the reasonable interpretation that it applies only to fraud in the procuring of the insurance. Second, it also is reasonable to read this provision as affecting coverage only in connection with the subsection or element of the claim to which the material misrepresentation or fraud relates. Third, this provision reasonably could be read, as Allstate asserts, as allowing it to void all coverage for an insured under the policy if there is fraud in connection with any claim of loss.
Only if the provision is construed in conformity with this third interpretation would we be required to determine if such a broad provision would conflict with the purposes of the statutorily mandated UM coverage.[6] However, in this case we conclude *751 that the clause in the general conditions portion of the Allstate policy is ambiguous because the general conditions section is susceptible to these differing reasonable interpretations. Therefore, in accordance with general principles governing the interpretation of insurance policies, we construe the provision in the light most favorable to the insured.
In this case, the fraud arose only in connection with a claim for PIP benefits and not in connection with the claim for UM coverage in which Allstate, as the UM carrier, stood in the shoes of the tortfeasor. We thus hold that this provision did not permit Allstate to deny UM coverage for unrelated fraud. Because we conclude that the provision as drafted by Allstate is ambiguous and should be construed in favor of the insured so as not to invalidate UM coverage, we do not reach the issue in this case of whether a provision that voided coverage of an entire automobile policy, including UM, PIP and liability coverage, upon the submission of a fraudulent PIP bill, would be contrary to the public policy of this State and the purpose of the statutorily mandated UM coverage.[7]
As stated earlier, the fraud in this case arose only in connection with a claim for PIP benefits and not in connection with the claim for UM coverage. The entitlement to PIP benefits was not an issue in this case. Thus, Flores contends that the evidence of fraud on the PIP claim unfairly prejudiced the jury against him on his UM claim. In response, Allstate contends that the Court should affirm the judgment in its favor because the jury's finding that Flores was 100% at fault based on his failure to wear a seat belt is supported by competent substantial evidence.
Ordinarily, if there has been error in the admission of evidence, the burden is on the beneficiary of the error to establish that the error was harmless. See Sheffield v. Superior Ins. Co., 800 So.2d 197, 203 (Fla.2001). Thus, the issue is not, as Allstate contends, whether competent substantial evidence supported the jury's finding regarding the failure to wear a seat belt, but whether in this case evidence of the fact that Flores submitted fraudulent bills would have been independently admissible or whether the admission of the evidence of fraud constituted harmless error. Because the Second District concluded that the UM coverage was properly voided based upon the fraud relating to the PIP coverage, the Second District never considered if the evidence of fraud was independently admissible on other issues in the case, or alternatively, whether its admission constituted harmless error. We thus decline to address these issues in this opinion.
Accordingly, we answer the certified question, as rephrased, in the negative, quash the decision of the Second District Court of Appeal and remand for further proceedings consistent with this opinion.
It is so ordered.
*752 HARDING, ANSTEAD, and LEWIS, JJ., concur.
WELLS, C.J., concurs in result only with an opinion, in which SHAW and QUINCE, JJ., concur.
WELLS, C.J., concurring in result only.
I concur in result only. I would simply hold that the provision under scrutiny in this automobile insurance policy does not unambiguously state that the coverage under the policy will be voided if a false medical bill is submitted under one part of the policy. I conclude that such an unambiguous provision would have to be the threshold for voiding coverage. Since this provision does not meet that threshold, I do not see a reason for the other analysis in the opinion in this case.
SHAW and QUINCE, JJ., concur.
NOTES
[1] It is undisputed in this case that the Flores family as operators and passengers in Meza's vehicle were omnibus insureds and accordingly were entitled to make claims under that policy.
[2] The coverages under the policy also included liability, property damage, collision, and comprehensive coverage for which separate premiums were charged, and the policy insures three separate vehicles.
[3] The jury awarded both Bobby Flores and Norma Flores damages, although the jury found Norma Flores 50% responsible for her damages for failing to wear a seat belt. Their awards were not challenged on appeal to the Second District, and are not an issue in this case.
[4] Because the jury found that Flores had engaged in fraudulent conduct in connection with the submission of the PIP bills and because Flores does not challenge that factual finding, we have assumed for purposes of this opinion that Flores did fraudulently submit PIP bills and receive reimbursement for those prescription expenses for which he did not pay.
[5] In fact, in contrast to the clause drafted by Allstate in this case, the policies in the cases relied on by Allstate in many out-of-state cases clearly state that fraud related to the application or any fraudulent claim made before or after the loss will void the entire policy. See McCullough v. State Farm Fire & Cas. Co., 80 F.3d 269, 271 (8th Cir.1996) (property insurance policy stating, "This policy is void in any case of fraud by you as it relates to the policy at any time. It is also void if you or any other insured intentionally conceal or misrepresent a material fact concerning... a claim under this policy") (emphasis supplied); State Farm Gen. Ins. Co. v. Best in the West Foods, Inc., 282 Ill.App.3d 470, 217 Ill.Dec. 764, 667 N.E.2d 1340, 1344 (1996) (property insurance policy stating, "This policy is void if, whether before or after a loss, any insured has intentionally concealed or misrepresented any material fact or circumstances relating to this insurance") (emphasis supplied); Home Ins. Co. v. Hardin, 528 S.W.2d 723, 724-25 (Ky.1975) (fire insurance policy stating, "This entire policy shall be void if, whether before or after loss, the insured has willfully concealed or misrepresented nay material fact or circumstance, concerning this insurance or the subject thereof ... or in case of any fraud or false swearing by the insured relating thereto") (emphasis supplied); Collins v. USAA Prop. & Cas. Ins. Co., 580 N.W.2d 55 (Minn.Ct.App. 1998) (property insurance policy stating, "The entire policy will be void if an insured has: a. before a loss, willfully; or b. after a loss, willfully and with intent to defraud; concealed or misrepresented any material fact or circumstance relating to this insurance") (emphasis supplied).
[6] Allstate asserts that allowing it to void the entire policy furthers the public policy of this State, which discourages insurance fraud. However, no statute specifically authorizes a UM carrier to void UM coverage in connection with a fraudulent bill submitted on the PIP claim. Moreover, we point out that if the vehicle that was responsible for the accident was not uninsured, Flores could have sued that tortfeasor and, if he recovered a judgment for damages, he could have received payment from the tortfeasor's liability policy.
[7] We also do not reach the issue of whether the entire amount of PIP coverage would be invalidated based on any fraudulent submission of a PIP bill because that issue is not before us. We recognize, of course, that this State strongly discourages insurance fraud. See, e.g, § 626.989, Fla. Stat. (1997) (recognizing and empowering the Division of Insurance Fraud); § 626.9891, Fla. Stat. (1997) (mandating that insurers create anti-fraud investigative units); § 817.234, Fla. Stat. (1997) (imposing criminal penalties for fraudulent insurance claims).