EVELYN REYNOLDS *v.* JOHN HANCOCK LIFE INSURANCE COMPANY.

(97 A2d 121)

February Term, 1953.

Present: SHERBURNE, C. J., JEFFORDS, CLEARY and CUSHING, JJ, and HUGHES, Supr. J.

Opinion Filed May 5, 1953.

542

*Sylvester & Ready* for the defendant.

*Carl S. Gregg* and *P. C. Warner* for the plaintiff.

JEFFORDS, J. This is an action of contract to recover for accidental death under a double indemnity provision in a life insurance policy which provided that the defendant, subject to the conditions and exceptions and exclusions therein set forth, upon receipt at its home office of due proof on its prescribed forms, directly and affirmatively showing that the death of the insured was caused directly, independently and exclusively of all other causes by a bodily injury sustained solely by external, violent and accidental means and evidenced by a visible wound or contusion, unless the death resulted from drowning, would pay a certain sum to the beneficiary.

The case was tried by jury with a resulting verdict and judgment for the plaintiff and it is here on various exceptions of the defendant.

On the evening of May 11, 1951, the insured left his home to go fishing. When he had not returned the next morning a search was made and his body was found in the waters of a marsh adjacent to Lake Champlain and separated therefrom by a road. Insured's head was towards the lake and his body was on the shoulder of the road toward the side of the marsh. The water was four or five feet deep at the feet and about two feet deep at his head and ten feet back from this latter point it was about ten feet deep. There were weeds and underbrush at this location but the feet and legs were not entangled. Insured's boat was nearby. In it was an unlighted lantern and fishing tackle, apparently unused. The deceased had on hip boots.

The body was removed to an undertaking establishment. Rigor mortis had set in by that time. There were no marks on the body. About one and one half quarts of water were found in the lungs. No autopsy was performed.

The insured was a large strong man forty years of age. He was an experienced fisherman, a good swimmer, and steadily employed at the time of his death. During his life he had had only minor illnesses.

A short time after the death an agent of the defendant called on the plaintiff beneficiary. He gave her a form of the defendant for proof of death. She signed this form and the statements therein called for were set forth either by this agent or another agent of the

company, apparently superior to the former. One of the statements so made was that the cause of death was "Drowned." The agent, with the approval of the plaintiff, then procured on a company form the "Attending Physician's Statement" from Doctor Dugan of Swanton. In this statement the disease or condition directly leading to death is stated to have been "Accidental drowning." The antecedent cause is stated to have been "Probable coronary occlusion." The agent then procured the "Standard Certificate of Death" required by law to be filed. This certificate was signed by Doctor Dugan with the same statement as to direct and antecedent causes as stated by him before. The agent took from the plaintiff at the time of his call the two policies here sued upon. In about three weeks he returned and gave her two checks covering payments for the single benefits under the policies. Attached to the checks was a note saying that if she was entitled to any more the company would be glad to settle. This note was retained by the agent.

On September 29, 1951, the plaintiff, not having heard from the defendant, wrote a letter to it stating that her husband had "died as a result of accidental drowning." She called the defendant's attention to the policies by number, stating that they contained the accidental death benefit provision. She said that so far she had received only the face amount of the policies and asked when she might expect the accidental death benefit payments. She asked if it did not think she had waited long enough.

The defendant replied to this letter on October 9, 1951, stating, in substance, that after a very careful investigation it had concluded that the death was not the result solely of accidental means as provided by the terms of the policies but according to its information the death was contributed to by a coronary occlusion which does not meet the requirements of accidental death benefits. The writer stated that this decision had been communicated to its Burlington office on August 14 and expressed surprise that the plaintiff had not been notified of it. The letter concludes with the statement that its investigation was carefully made but if the claimant feels there is material evidence which the company should consider not yet presented which would support her claim that the company would welcome the opportunity to review such evidence.

The plaintiff replied to this letter and payment not having been made brought this suit.

■ The defendant moved for a directed verdict and also that the verdict be set aside. The grounds of these motions as here briefed are substantially the same. They are, in effect, that the plaintiff failed to sustain her burden of proving that the death was caused from drowning alone, or in the words of the policies, by drowning "directly, independently, and exclusively of all other causes." There can be no doubt that the plaintiff had this burden. *Jacobs* v. *Loyal Protective Ins. Co.*, 97 Vt 516, 521, 124 A 848. The question of whether she has sustained it must be answered by a review of the medical testimony given at the trial. This testimony, of course, is to be viewed in the light most favorable to the plaintiff. It will be considered at the same time on the question of whether a coronary occlusion contributed to the death, as claimed by the defendant.

Dr. H. L. Pierce, who had been the decedent's family physician, testified that the deceased had always had good health and that he had never treated him for any ailment of a coronary nature. That if a person has this ailment it would be very likely that he would have symptoms indicating it. That a coronary occlusion is rare in the younger age group, but there is a possibility. That death from drowning is caused by suffocation with a resulting cyanosis or blueness of the face and body. That he would think a quart of water in the lungs would cause death by drowning.

Dr. McDonald Peggs, basing his statements on testimony he had heard, gave the following pertinent testimony: That the amount of water taken from the lungs of the insured was in and of itself sufficient to cause his death. That in his opinion there was no other cause of death than drowning. That he had no reason for making a diagnosis of a coronary occlusion and had every reason for making one of drowning. That from talking with the attorneys for the plaintiff before trial he had been of the opinion that the death was caused by accidental drowning and that the testimony he had heard had confirmed this opinion.

Dr. R. J. Catlin who was called by the defendant testified that he had had no experience in drowning cases. He had given particular study to the "heart cardia condition." He stated that he would feel that coronary occlusion or thrombosis "probably was the best possibility as a cause of disability at the time in question." He doubted that the cause of death was drowning. He stated that cor-

onary occlusion occurring in the younger age group, forty years of age, is more apt to result in sudden death than in the older group. But he said that there was nothing in the history of the case of the deceased or in the evidence from which he could draw the conclusion that the insured had a coronary occlusion at the time.

Dr. O. L. Dugan who had examined the body at the undertaking establishment and had made out the attending Physician's Statement and the Standard Certificate of Death, above referred to, stated that he reached certain conclusions as to the cause of death which he set forth in these papers. On cross examination he stated that he arrived at these conclusions because he thought that something must have happened to the deceased to have him drown or fall in the water and the only probable or most likely thing that could have happened to a man of his size, age and apparent health, in his opinion, was a coronary occlusion. Other reasons for his opinion were the position of the arms and the color of the face of the deceased. But he stated that these matters would be equally consistent with drowning alone as the cause of death.

The defendant contends that from the evidence the jury could only have speculated or conjectured as to whether there was an accidental death within the terms of the policies. This is not so. There was substantial evidence from the testimony of doctors Pierce and Peggs, especially the latter, upon which the jury acting reasonably could return a verdict for the plaintiff on this issue. This being so there was no error in denying the motions for a directed verdict or to set aside the verdict. *Wellman, Admr.* v. *Wales,* 98 Vt 437, 447, 448, 129 A 317.

The defendant attempts to discredit the opinion of Dr. Peggs to the effect that the cause of death was by accidental drowning alone because it was based on three factors only. At the most, this fact would only go to the weight of his testimony which was for the jury to determine. *McClary* v. *Hubbard,* 97 Vt 222, 242, 122 A 469.

The defendant also claims that the plaintiff had the duty of establishing that the death did not result "directly, indirectly, or wholly or partially from any bodily or mental disease or infirmity" and that there is no evidence to show this. The answer to this contention is that these quoted words form one provision included in the Exceptions and Exclusions set forth in the policies and the burden of proof was on the defendant to show that the facts bring the

case within the exception. *Jacobs* v. *Loyal Protective Ins. Co.,* *supra,* at pages 520 et seq.

The defendant took several exceptions to the charge of the court. Only such as are briefed are here considered. The first is "to the failure of the court to charge that no benefits are payable to the plaintiff if Reynolds' death resulted directly or indirectly or wholly or partially from any bodily or mental disease or infirmity." The basis of this exception is the failure to charge the wording of the provision in the Exceptions and Exclusions above set forth. The court did not charge in the exact form and words therein used. It did charge in substance, as follows: That the plaintiff would only be entitled to recover if the death "was due solely to drowning exclusive of all other causes." That the claim of the plaintiff is that the accident "directly and exclusively of all other causes was the means by which he succumbed at the time he did." "That in order for the plaintiff to recover it is necessary for her to prove by a fair balance of the evidence that drowning was the sole proximate cause of death." Proximate cause was then defined. "Drowning as the sole cause of death exclusive of all other causes" is again stated. Also, that "if the deceased was precipitated into the water by reason of a fatal attack of coronary occlusion, or had one while voluntarily wading and drowned concurrently with such a fatal attack then there can be no recovery in this case." That the claim of the plaintiff is death "from accidental drowning exclusive of other cause" and the burden is on her to establish her case by a fair balance of the evidence.

The defendant says that "Instructions with respect to 'directly' and 'indirectly' were essential, so also 'wholly or partially,' as such were applicable as disclosed by the pleadings and the evidence." It is apparent that it complains only of the omission in the charge of the last two quoted words.

The defendant does not claim, nor do we know of any requirement, that the court was required to charge the exact wording of the provision. It appears to us that it is sufficient if its meaning and force are presented in clear and understandable language. See *McKenna* v. *McDonald,* 111 Vt 60, 63, 10 A2d 208. Here, several times, in substance, it is charged that for the plaintiff to recover she must prove that the death resulted solely and exclusively from accidental drowning exclusive of all other causes. It would be unrea-

sonable to hold that the jury may well have failed to understand from this language that the plaintiff could not recover if the death resulted wholly or partially from a coronary occlusion. In fact they were told, in effect, that there could be no recovery if such were the case.

Moreover, if the court had charged as the defendant says it failed to do, it would have been required to also charge that the burden of proof was on the defendant to show facts that brought the case within this provision. *Jacobs* v. *Loyal Protective Ins. Co., supra.* In view of the fact that the jury found the plaintiff had sustained her burden of proof, it would be unreasonable to expect that they would have found that the defendant had sustained its burden if the exact language of the provision had been stated. Thus it does not appear that the defendant has been harmed by the claimed failure to charge.

Several of our cases are cited by the defendant in support of this exception. The only one that need be noticed is *Clark* v. *Employers' Liability Assurance Co.,* 72 Vt 458, 48 A 639. The policy in that case apparently was similar to the ones here. The defendant requested a charge to the effect that there could be no recovery if the death was caused by accident if it was also found that disease or bodily infirmity contributed "directly or indirectly" thereto. This request was not complied with literally and it was held that there was no compliance unless such could be found in the instructions given. It was held that it was necessary for the plaintiff to show, not only that the injury received was the direct cause of death, but that disease did not indirectly cause the death by subjecting the insured to that injury and that the charge failed to present this view to the jury.

It is not entirely certain whether the policy provision in that case was contained in one of the Exceptions in the policy. If it was, the rule therein set forth as to the burden of proof is contrary to that stated in the Jacobs case and must be considered to have been overruled in the latter case. In the Clark case there was a request to charge which the Court held, in effect, was a proper request and not substantially complied with. The fault found with the charge was that it failed to present to the jury the fact that there could be no recovery unless the plaintiff had shown that disease did not directly cause the death. In the present case, for the reasons stated, we hold that the charge, taken as a whole, fairly and clearly gave the jury to understand that there could be no recovery if the death resulted

wholly or partially from any bodily or mental disease or infirmity which, as applied to the only claim of the defendant in this case, would be a coronary occlusion.

The defendant excepted to the failure of the court to charge the jury that mere silence by the defendant so far as communicating anything to the plaintiff from the time that the proofs were filed is not a waiver.

The court charged that one of the three elements which the plaintiff must prove in order for her to recover was that she either furnished due notice and proof of loss in accordance with the policy provisions or that the defendant expressly or impliedly waived the same. It stated that the defendant has a right to have a proof of claim which conforms to what it has stipulated for in its contracts and that it claims it has never had such proof. Waiver is defined and the matter gone into at some length. It is shown that it may arise either from words or conduct. Silence is not mentioned.

██ Silence, alone, is never a waiver. It is only where there is an obligation to speak, that it has that result. *Dunbar* v. *Farnum,* 109 Vt 313, 322, 196 A 237, 114 ALR 996. When a *bona fide* attempt to comply with the requirements of the policies has been made, simple fairness requires that the company should point out any defects in the proof of loss or claim therein if it would rely on them. *Tyrrell* v. *Prudential Ins. Co.,* 109 Vt 6, 18, 192 A 184, 115 ALR 392.

Here, the plaintiff did everything that she was asked to do by the agent in the way of making proof of her claim. The policies were taken by him. He obtained the two death certificates. He and another agent filled in the form for proof of death which she signed. When the checks were delivered by him to her for the single benefit she was given to understand that she would receive the additional benefits if she were entitled to them. It was only after the plaintiff had written the defendant inquiring why she had not received the additional benefits that she learned that the company after careful investigation had decided that it was not liable and would not pay. In the letter giving this information no fault is found with the form or substance of the proofs submitted but merely a suggestion that if the plaintiff has any additional evidence to support her claim it would be considered. Surely there was here an honest attempt to comply with the requirement of the policies in respect to

proof. If the company felt that there were any deficiencies in the proof it was under an obligation to say so. Thus it is apparent that there was no error in not charging that mere silence is not waiver. Indeed it would have been error to so charge as it would have been unwarranted under the facts and circumstances here appearing.

The defendant excepted to the failure of the court to define due proof. A condition for the payment of the additional benefit was the receipt of due proof "on the prescribed forms of the company" showing the cause of death, as first above stated. There is no need to determine whether the court should have given the definition claimed by the defendant. The court charged that for the plaintiff to recover she must prove either that proof of loss or claim was furnished in accordance with the policy provisions or that the defendant waived this requirement. As this requirement is inserted in the policies for the sole benefit of the company it can be waived. *Tyrrell v. Prudential Ins. Co., supra.* The defendant makes no claim that the jury reasonably could not have found waiver of this right by the actions of its agents. Indeed, in effect, it admits this is so. We have disposed of its claim relating to mere silence as a waiver. We will assume, in support of the verdict, that the jury found the defendant waived its policy requirement of due proof as there was ample evidence to support such a finding.

Dr. Peggs was asked whether as a result of the testimony which he had heard he had an opinion as to the cause of death. He answered that he had. When asked for that opinion an objection was made on the ground that the witness had not heard all of the testimony. It developed that during the two days of the trial up to that time he had been absent from the court room for a period of five or ten minutes to smoke during the testimony of witness Tatro who had found the body.

V. S. 47, § 1748 provides that "An expert witness may be asked to state his opinion based on the witness' personal observation, or on evidence introduced at the trial and seen or heard by the witness" * * * . After some discussion of this statute the court suggested that the testimony in question be read to the witness and that he be asked whether there was anything in it which would vary his opinion one way or the other. The testimony was read and the witness said it would not affect his opinion as to the cause of death which was drowning.

This testimony had to do with the position of the body, the depth of the water, the taking of the body from the water and the report to the selectman and the undertaker of the accident. The opinion of the witness of death by drowning was based on three factors, according to him. These were: that the insured was found dead in the water; that there was water in his lungs and that there were no external marks of violence. We cannot see any reason why the hearing of this testimony read, rather than hearing it from the witness, would have any bearing one way or the other on any of these factors. It appears to us that the situation was handled by the court in a fair and sensible way with no harm resulting to the defendant.

 Assuming, without deciding, that there was not a literal compliance with the statute, it would be unreasonable to hold that the Legislature intended to prohibit a compliance therewith such as was here made under the facts and circumstances here appearing. An unreasonable construction of a statute is to be avoided if possible. *Myott* v. *Vt. Plywood, Inc.*, 110 Vt 131, 136, 2 A2d 204.

The defendant relies on what is said in *State* v. *Gravelle*, 117 Vt 238 at 247, 89 A2d 111. In that case it appears that the expert witness had been present little if any of the time during which testimony was given on which he was asked to base his opinion. The facts are so different that the holding there does not here apply. The other cases cited by the defendant are not in point.

*Judgment affirmed.*