## American Fidelity Company v. North British & Mercantile Insurance Co., Ltd., et al

[ 204 A.2d 110 ]

June Term, 1964

Present: Holden, C. J., Shangraw, Barney, Smith and Sylvester, JJ.

Opinion Filed October 6, 1964

*A. Pearley Feen, Paul D. Sheehey* and *R. Allan Paul* for plaintiff.

*Loveland and Hackel* for defendant.

**Barney, J.** The accident happened during a five-block trip for ice cream for two six-year old girls. Their play diverted the attention of the driver, one Blanchard, and he struck a parked car in which

some people were sitting. As a consequence, the insurance carrier for Blanchard became liable to pay a $6,000.00 judgment in favor of the injured. The car Blanchard was driving belonged to one Fredette, a car dealer doing business as Fredette Motors. Blanchard's insurer, the plaintiff here, brought this action to obtain contribution from Fredette's insurer, in proportion to the coverage available to Blanchard as an additional insured under Fredette's insurance contract with the defendant. The suit took the form of an action in equity for a declaratory judgment, and, based on his findings of fact, the chancellor gave judgment in favor of the defendant.

Two issues govern the litigation. First, in view of the use being made of the automobile, was Blanchard within the definition of an "insured" in defendant's policy, and so within its coverage? The other question is whether or not the participation of plaintiff and defendant in payment of the judgment is governed by their subsequent agreement, or conduct amounting to waiver or raising an estoppel, regardless of policy terms?

On the first issue, the parties are urging the adoption of "rules" ranging from the strictest, called the conversion rule, through the moderate, called the minor deviation rule, to the broadest, called the initial permission rule. See *Konrad* v. *Hartford Accident & Indemnity Co.,* 11 Ill. App. 2d 503, 137 N.E.2d 855, beginning on page 861, for a discussion of these rules.

The conversion rule requires that permission have been given for the particular use being made of the vehicle at the time of the accident. The minor deviation rule, as its name implies, holds that a small deviation from the use encompassed by the permission granted will not bar coverage, but a major one will. The initial permission rule requires only that there be permission to use the vehicle in the first instance to provide coverage, whatever the actual use made of the vehicle. All of these rules relate to interpretation of the standard omnibus clause extending policy benefits to persons other than the named insured, a clause present in defendant's policy and reading as follows: "Any person while using the automobile covered by this policy and any person or organization legally responsible for the use thereof provided the actual use of the automobile is by the named insured or with his permission."

Rules and categories are tempting devices for arriving at automatic answers. Sometimes the distinguishing qualities of the classifications

coincide with the essential differences between situations. And sometimes they do not. Sometimes the categories carry with them characteristics of their own which introduce deceptive or irrelevant distinctions into a decision, leading us away from the substance of an inquiry.

It is, therefore, usually best for courts to meet the issues completely on a case by case basis, leaving classification to others, limiting the use of general propositions to those that are essential to an understanding of the manner in which the court resolved the questions involved, and the way it will approach others like it. This is the genius of our common law system, deriving the general rule from the specific case.

In the matter at hand, as so often happens, we must deal with competing and conflicting considerations. To follow the initial permission rule completely may make decisions in this area simple, certain and predictable. In law, these are advantages not lightly cast aside. And yet, there come to mind applications of such a rule grossly inequitable, like the conversion of the permitted around-the-block demonstration spin into a cross-country trek.

The minor deviation rule is troublesome because there is so little of a rule about it. It must, to be useful, be accompanied by some standards by which the measurement of deviations as minor or major can be consistently accomplished. When such standards are arrived at, they become themselves a more useful and more definitive rule.

The strict conversion rule derives from the contractual origins of the policy provisions. It applies the rules of construction appropriate to personal service or bargain and sale transactions to contracts of indemnity. That this is unduly narrow can be easily seen, since the object of the contract is to protect against incurred liability, which derives from tort law. The concepts of tort responsibility reach beyond agreed limitations, as in cases of a master's responsibility for tortious acts of his servant who is acting within the scope of his employment although beyond its express terms. *Young* v. *Lamson,* 121 Vt. 474, 477, 160 A.2d 873.

Since the object of the insuring agreement is the assumption of tort liability which is expected to arise out of circumstances beyond the mutual control of the contracting parties, too narrow construction may defeat the purpose of the agreement. It is because of such con-

siderations that most courts give a broad, rather than a narrow, construction to liability policy language. *Harte* v. *Peerless Ins. Co.,* 123 Vt. 120, 124, 183 A.2d 223. Since these liability policies are drafted by the insurer, it is not unreasonable, having in mind that the policies are sold as shields against liability claims, to construe the terms of the agreement as broad as its intended purpose, and giving its language appropriate breadth of meaning. *Griswold* v. *Metropolitan Life Ins. Co.,* 107 Vt. 367, 381, 180 Atl. 649.

An automobile is an instrument of general transportation utility. It has replaced foot travel for trips to the corner store, as well as being useful for trancontinental journeys. With casual use so common and usual in our society, it is unrealistic to expect that absolutely no such use will be made of a convenient car when borrowed. The language of the standard omnibus provision, present in the policy concerned here, does not suggest any such prohibition.

The chancellor found that Blanchard's errand to obtain ice cream for the children was unconnected with any purpose connected with the sale of the car and was solely for the personal benefit of Blanchard. He went on to find that this purpose was outside of the permitted use authorized by Fredette. He held that, since Fredette intended Blanchard to use the vehicle for purposes in connection with its sale, the policy issued by the defendant did not give coverage to Blanchard as an additional insured for the accident.

From the principles previously discussed it is plain that this result does not follow as a matter of law from the policy provisions. The question then becomes one of whether or not there are facts which make a different result appropriate, supporting the finding restricting the scope of the permitted use. Although an agreement spelling out such a limited permission to use an automobile is within the realm of contractual possibility, it is so much narrower than the usual understanding of permitted use, that full factual foundation is essential to support such a finding. In the setting of this case, it is not a matter for inference.

This is where we turn away from the strict construction rule. Admittedly, in the first instance, one who is claiming the benefits of a policy has the burden of showing that use of the vehicle was by permission. See *American Fidelity Co.,* v. *Hotel Poultney,* 118 Vt. 136, 138, 102 A.2d 322. But rather than assume the right of use is limited, we take the view that it is far more consistent with usual

usage and understanding, to put the burden on the party claiming strict limitation to demonstrate the establishment of such a condition, as between the parties. *Reynolds* v. *John Hancock Life Ins. Co.,* 117 Vt. 541, 545, 97 A.2d 121.

In other words, with a showing that the vehicle was placed in the hands of the operator by consent, a presumption arises that the particular use to which the vehicle was being put was within the scope of that consent as measured by the law. The overcoming of this presumption requires evidence establishing that consent had been expressly withdrawn prior to the actual use, or that the actual use was so far afield from the purpose of the loan of the vehicle as to amount to, at best, a temporary tortious conversion, as described in *Rainville* v. *Farm Bureau,* 117 Vt. 37, 39-40, 83 A.2d 599.

Examining the transcript in this case we find that both Blanchard and Fredette agreed that there had been no conversation between them relative to any restrictions on the use by Blanchard of any Fredette vehicle turned over to him. This situation continued even after the accident in question when Fredette returned the repaired car to Blanchard to be sold, knowing the full circumstances of the mishap.

In support of the chancellor's finding of a restriction on use, the evidence does disclose testimony by both Blanchard and Fredette, indicating an intention on the part of Fredette and a realization on the part of Blanchard, that the car was in Blanchard's possession for the purposes of demonstration and sale. But this is insufficient factual support for the chancellor's finding, which concluded that the short errand undertaken by Blanchard just prior to setting out to meet his customer for the car was, in the legal sense, without permission. This finding cannot be sustained.

The defendant places some reliance on the case of *Anderson* v. *Toombs,* 119 Vt. 40, 117 A.2d 250, as supporting the chancellor's strict construction of permission. The issue in that case was one involving a master-servant relationship and the doctrine of respondent superior. These matters are not present in this case.

Against a rejection of coverage the plaintiff alternatively argued that the evidence demonstrated a waiver by the defendant of any policy defenses. The defendant vigorously denied any such construction of its conduct, and the chancellor found against the plaintiff on

the facts relating to this issue. His findings have evidentiary support, and sustain his conclusion that there was neither waiver nor estoppel here. *Farm Bureau Ins.* v. *Houle,* 118 Vt. 154, 160, 102 A.2d 326.

The judgment in this case must be reversed. Since the policies of both plaintiff and defendant contain a clause apportioning loss according to a ratio based on the policy limits, the cause will be remanded for the drawing of a new decree assigning liability between plaintiff and defendant on the basis of these policy provisions.

*Reversed and remanded for the drawing of a new decree in accordance with the views expressed in this opinion.*

**Shangraw, J.,** concurring. I agree that there must be a reversal. I would do so on a basis other than that expressed in the opinion.

The omnibus clause contained in the policy, or a clause of like import, has been considered in many jurisdictions. It has produced widely variant philosophical concepts which have been classified generally in three categories—that is, the liberal or so-called "initial permission" rule, the moderate or "minor deviation" rule, and the strict or "conversion" rule.

Under the initial permission rule if a person has permission to use an automobile in the first instance, any subsequent use, short of theft or the like, while it remains in his possession, though not within the contemplation of the parties, is a permissive use within the terms of the omnibus clause. See, Annotation, 5 A.L.R. 2d 600, 629-36 (1949), also, *Matits* v. *Nationwide Mutual Insurance Co.,* 33 N.J. 488, 166 A.2d 345.

By the minor deviation rule the permittee is covered under the omnibus clause so long as his deviation from the permissive use is minor in nature. See 5 A.L.R. 2d, *supra,* 636-43, and cases cited. This means, fundamentally, that the vehicle must be used for a purpose reasonably within the scope of the permission granted.

The view under the strict or conversion rule is that any deviation from the time, place or purpose specified by the person granting permission is sufficient to take the permittee outside the coverage of the omnibus. Again see, 5 A.L.R. 2d, *supra,* 626-29. For additional authority discussing these rules, see, 7 Appleman, Insurance Law and Practice, §4366-68, at 170, 172, 178 (1942).

I agree that the strict conversion rule is too narrow. While some states have adopted this rule, it appears to be the minority view.

The minor deviation rule takes a position between the initial permission rule and the conversion rule. It adopts all of the requisites of the conversion rule with one important modification—that protection will be afforded if the use is not a gross violation of the terms of the bailment even though it may amount to a deviation. What is a minor deviation? Conversely what is a major deviation such as to result in a gross violation of the terms of the bailment? Why should an injured person be required to litigate these questions, or be subject to the delays incident thereto? It is my judgment that this rule is too elastic and affords too many escape hatches. It breeds litigation, such as here.

The states favoring the minor deviation rule and the initial permission rule appear to be pretty closely divided.

The rationale in support of the initial permission rule is that even an ordinary automobile liability insurance contract is as much for the benefit of members of the public as for the benefit of the named or additional insured and that therefore upon an injury occurring, it would be undesirable to permit litigation as to the use made of the automobile, the scope of permission given, the purposes of the bailment, and the like. 5 A.L.R. 2d, *supra,* pages 629, 630. This reasoning finds affirmance in the case of *Konrad* v. *Hartford Accident & Indemnity Company,* 11 Ill. App. 2d 503, 137 N.E.2d 855, 861. Also see, *Dickinson* v. *Maryland Casualty Co.,* 101 Conn. 369, 125 Atl. 866.

The plaintiff has urged the adoption of the initial permission rule by this court. My disposition of this case would be on this basis. I favor this rule and believe the courts are generally moving in this direction.