2009 VT 27

**NORTHERN SECURITY
INSURANCE COMPANY, INC. v.
David P. DOHERTY, Teresa Doherty,
Lucinda Prohaska, Ronald Prohaska,
and James T. Doherty, Trustee of the
Water Andric Farm Trust**

[987 A.2d 253]

No. 08-076

¶ 1. March 12, 2009. The Prohaskas appeal from the Washington Superior Court's order granting summary judgment to Northern Security Insurance Company (NSIC) on the issue of whether a homeowner's policy that NSIC issued provides personal liability coverage for David Doherty. David Doherty is the defendant in an underlying tort action brought by the Prohaskas pending in federal district court. We reverse.

¶ 2. The uncontested facts of this case are as follows. The underlying tort suit arose out of an incident involving Ms. Prohaska and David Doherty's dog that occurred when David Doherty, a Connecticut resident, was vacationing at the Water Andric Farm (the Farm) in Danville, Vermont, a family vacation home and the residence premises covered by the homeowner's policy at issue.

¶ 3. James T. Doherty, also a Connecticut resident and the brother of David Doherty, owns the Farm in trust for himself and his six siblings — including David — and their issue. The Water Andric Farm Trust (the Trust) was created in Connecticut and recites that it is to be governed by Connecticut law. In 1996, James sought to have the Trust listed as the sole named insured on a longstanding homeowner's policy covering the Farm issued by NSIC. NSIC refused to do so, instead naming James as the named insured, and the Trust as an additional insured.

¶ 4. David's homeowner's insurer defended him in the underlying tort case, and paid the limit under his policy as part of a partial settlement agreement with the Prohaskas. The agreement limits David's liability to the settlement amount paid by David's homeowner's insurer and any additional amount that can be satisfied through the NSIC policy. NSIC initiated this declaratory judgment action to establish that its policy affords David no coverage. The Prohaskas filed a counterclaim seeking a declaration that there was coverage. Both parties moved for summary judgment.

¶ 5. Before the superior court, the Prohaskas argued that naming the Trust as an additional insured created an ambiguity that should be interpreted in favor of extending coverage to the Trust beneficiaries, including David. In its order granting NSIC summary judgment, the superior court reasoned that although naming the Trust as an additional insured was problematic from a contract-interpretation standpoint, it did not present an ambiguity in policy language that should be interpreted in favor of coverage. Instead, the superior court looked to the intent of the contracting parties in order to determine what they meant by naming the Trust as an additional insured. The court concluded that it was undisputed that James and NSIC's agent intended to insure the owner of the Farm, and, under a mutual mistake of law, thought the Trust itself owned the Farm. The court therefore reasoned that because James owned the Farm and was already covered as a named insured, the additional-insured provision was a nullity that provided no additional coverage. This appeal followed.

¶ 6. The parties make the following arguments on appeal. The Prohaskas argue, as they did before the superior court, that naming the Trust as an additional insured created an ambiguity that should be interpreted in favor of extending cov-

erage to the Trust beneficiaries. NSIC argues that there was no ambiguity in the policy, that the trial court properly referred to the intent of the contracting parties in construing the policy, and that the rule of construction that ambiguities in insurance policies be resolved in favor of coverage is otherwise inapplicable on the facts of this case. Finally, NSIC argues that David Doherty's potential liability for the incident involving his dog and Mrs. Prohaska does not arise from a claim "with respect to the residence premises" and is therefore outside policy coverage in any event. We reverse because: (1) we agree that naming the Trust as an additional insured created an ambiguity that should be interpreted in favor of extending coverage to the Trust beneficiaries, including David; (2) we conclude that nothing in the facts of this case makes inapplicable the rule that ambiguities in insurance policies are resolved in favor of coverage; and (3) we conclude that the language limiting coverage to claims "with respect to the residence premises" does not exclude coverage in this case.

¶ 7. We review summary judgments de novo, using the same standard as the trial court. *State v. Great Ne. Prods., Inc.*, 2008 VT 13, ¶ 5, 183 Vt. 579, 945 A.2d 897 (mem.). Summary judgment is appropriate when the moving party has demonstrated that there are no issues of material fact and that it is entitled to judgment as a matter of law. *Id.*; see also V.R.C.P. 56(c). We resolve this case on the basis of the homeowner's insurance policy's language. The interpretation of an insurance policy, like other contracts, is a question of law over which our review is nondeferential and plenary. *Fireman's Fund Ins. Co. v. CNA Ins. Co.*, 2004 VT 93, ¶ 8, 177 Vt. 215, 862 A.2d 251. The issue of whether an insurance policy is ambiguous is also a question of law which merits de novo review. *DeBartolo v. Underwriters at Lloyd's of London*, 2007 VT 31, ¶ 9, 181 Vt. 609, 925 A.2d 1018 (mem.).

¶ 8. The rules we apply to the interpretation of insurance policies are easily understood. When interpreting insurance policies, we strive to give effect to the intent of the parties as expressed in the plain language of the instrument. *Id.* To that effect, "[d]isputed terms are to be read according to their plain, ordinary and popular meaning." *Chamberlain v. Metro. Prop. & Cas. Ins. Co.*, 171 Vt. 513, 514, 756 A.2d 1246, 1248 (2000) (mem.). Should the plain meaning of policy terms evade our detection, however, the resulting ambiguity will be construed in favor of coverage. *DeBartolo*, 2007 VT 31, ¶ 9; see also *Fireman's Fund*, 2004 VT 93, ¶ 9. This rule of construction is consistent with our aim of effectuating the parties' intent. The purpose of an insurance policy, after all, is to protect the insured; construing ambiguities in favor of coverage promotes this protective purpose. See *Am. Fid. Co. v. N. British & Mercantile Ins. Co.*, 124 Vt. 271, 273-74, 204 A.2d 110, 113 (1964); see also 2 L. Russ & T. Segalla, Couch on Insurance § 22:19, at 22-49 (3d ed. 2005).

¶ 9. Less easy to articulate is our methodology for detecting ambiguity. As we have said in the past, "[t]here are no easy guidelines for determining whether language in an insurance contract is ambiguous." *N. Sec. Ins. Co. v. Hatch*, 165 Vt. 383, 386, 683 A.2d 392, 394 (1996). "An insurance contract is ambiguous if it is reasonably or fairly susceptible of different constructions." *Id.* at 386, 683 A.2d at 395 (quotation omitted). "Equivocation and uncertainty, whether in the significance of the terms used or in the form and construction of sentences," constitute ambiguity. *Id.* (quotation omitted).

¶ 10. As the superior court essentially acknowledged when it characterized the choice as "problem[atic]," the parties to the insurance policy created an ambiguity by naming the Trust as an additional insured. This is so because, as the superior court acknowledged, at common law,

trusts are not independent legal entities with the capacity to sue or be sued. See generally 1 A. Scott & W. Fratcher, The Law of Trusts § 2.3, at 41-42 (4th ed. 1987) (describing a trust as a relationship); Restatement (Third) of Trusts §§ 2, 3 (2003) (same).\* The ambiguity arises because an entity that lacks the capacity to be sued would have no occasion to utilize insurance. Therefore, the naming of the Trust as an additional insured is of uncertain significance; this clearly falls within the realm of ambiguity as we have defined that term. See *Hatch*, 165 Vt. at 386, 683 A.2d at 394 ("[U]ncertainty . . . in the significance of the terms used" constitutes ambiguity. (Quotation omitted.)). Because the policy language is ambiguous, we construe it in favor of providing coverage for the beneficiaries of the Trust, including David. See *DeBartolo*, 2007 VT 31, ¶ 9 (ambiguities are construed in favor of coverage); *Fireman's Fund*, 2004 VT 93, ¶ 9 (same).

¶ 11. The superior court declined to apply this rule of construction in part because the ambiguous language at issue here was not boilerplate. The court's hesitance to apply the rule on these grounds was unnecessary. It is true that one of the several justifications for the rule "is that

---

\* The Trust recites that it is to be governed by Connecticut law, which is in accord with this traditional view. See, e.g., *Booker v. Cappozziello*, No. CV054010211S, 2006 WL 2194653, at \*\*2-3 (Conn. Super. Ct. July 21, 2006) (explaining that a common law trust lacks capacity to sue or be sued); *373 Noble Ave. Trust v. Leonard*, No. CV054007390S, 2006 WL 2193348, at \*\*3-4 (Conn. Super. Ct. July 18, 2006) (explaining that trust lacks standing to sue); *Randolph Found. v. Appeal from Probate Court*, No. X05CV980167903S, 2001 WL 418059, at \*\*16-17 (Conn. Super. Ct. Apr. 3, 2001) (exhaustively analyzing the legal standing of common law trusts and citing additional Connecticut cases).

policies of insurance are made on printed forms carefully prepared in the light of the insurer's wide experience, by experts employed by the insurer, and in the preparation of which the insured has no voice." 2 Russ & Segalla, *supra*, § 22:18, at 22-46. As stated above, however, we also apply the rule because it is consistent with our ultimate goal of effectuating the parties' intent.

¶ 12. Neither do other facts of the case make the rule inapplicable. The superior court erred in reasoning that it would be inappropriate to apply the rule because the ambiguity in this case relates to who is an insured. We have applied the rule in the past in cases where the ambiguity was as to whether a person was among those insured by the policy. See *Am. Fid. Co.*, 124 Vt. at 274, 204 A.2d at 112-13. Moreover, application of the rule is still appropriate even though it is the Prohaskas — not parties to the policy — who are advocating for, and who will ultimately receive, the benefit of coverage. Tort plaintiffs routinely benefit from coverage provided by liability insurance policies and frequently must litigate to enjoy the benefits of that coverage. The rule is generally applied in the context of liability insurance notwithstanding the fact that it "is in many ways for the protection of a third party victim as much as for that of the insured." 2 Russ & Segalla, *supra*, § 22:14, at 22-37. Indeed, we applied the rule for the ultimate benefit of a tort plaintiff and the immediate benefit of an insurance company seeking indemnification — both nonparties to the insurance policy — in *American Fidelity Co.*, 124 Vt. at 274, 204 A.2d at 113.

¶ 13. Moreover, our decision is consistent with what was obviously the parties' intent. It was undisputed that the parties' ultimate goal in contracting for insurance coverage was to protect the Trust property. As the Prohaskas argue, the only way to protect the Trust assets from exposure to liability would be to cover the

Trust beneficiaries. This is so because while "[a] judgment against [the trustee] is collectible out of his individual assets and not out of the trust property," G. Bogert, The Law of Trusts and Trustees § 712, at 262-63 (rev. 2d ed. 1982), a creditor of a beneficiary may be able to reach that beneficiary's equitable interest in the trust to the satisfaction of their claims, Restatement (Third) of Trusts § 56. It is the beneficiaries in this case who are analogous to the homeowner, in that they are entitled to the benefit of residing at the Farm premises and incur the concomitant risk of liability. Under NSIC's theory, however, the beneficiaries would not enjoy any of the benefits of coverage — including defense and indemnity — normally associated with homeowner's insurance.

¶ 14. Finally, NSIC argues that, even if David is an insured under the policy, he is not covered in this instance because his liability did not arise "with respect to the residence premises." They argue that the claim against David — that he failed to leash or otherwise control his dog — has nothing to do with the Farm, that is, the residence premises. Of course it does. The dog was residing at the Farm with David on the day the claimed incident occurred. Under our reading of the broad "with respect to" language, these facts are enough to merit coverage under the policy. See *Bianco v. Travelers Ins. Co.*, 472 N.Y.S.2d 184, 185 (App. Div. 1984) (It is unnecessary that a dog-inflicted injury "arise out of any defect" in the premises itself in order for a claim to arise "in connection" with the premises.). It is of no moment that the dog-inflicted injury is alleged to have occurred off of the residence premises. Where a policy covers damages that arise out of ownership of a premises, "the fact that the damage occurs off the premises is immaterial if the operative negligence occurred on the insured property." 9 Russ & Segalla, *supra*, § 126:9, at 126-35. Here, the claim is that the dog was not properly leashed or controlled during his time at the Farm.

¶ 15. Moreover, NSIC fails to appreciate the actual purpose of the endorsement: to clarify that additional insureds are only protected from liability with respect to their presence at the Farm and not to any other residence or building or business premises, unlike David's homeowner's insurance that provided coverage for his actions at the Farm.

*Reversed.*

Motion for reargument denied September 1, 2009.