*Sharon Academy, Inc. v. Wieczorek Insurance, Inc.*, No. 442-7-13 Wncv (Grearson, J., February 25, 2015)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT

SUPERIOR COURT                                        CIVIL DIVISION
Washington Unit                                        Docket No. 442-7-13 Wncv

The Sharon Academy, Inc., and Curtis Koren
        Plaintiffs

        v.

Wieczorek Insurance, Inc., et al.
        Defendants

DECISION re:
Cross-Motions for Summary Judgment

This insurance dispute arose out of a tort suit filed by a former student, Simone Labbance, against The Sharon Academy, Inc., (the School) and Ms. Curtis Koren. *Labbance v. The Sharon Academy, Inc.*, 86-2-13 Wncv. In the underlying tort case, Ms. Labbance alleges that she enrolled in Vermont Intercultural Semesters, a semester abroad (India) program operated by the School and Ms. Koren for the Spring 2011 semester. She alleges that shortly after arriving in India she was sexually assaulted by Mr. Tashi Wangchuck (not a defendant). Mr. Wangchuck, an Indian national, is alleged to have been employed in some capacity by or on behalf of the School for purposes related to the program. The tort claims are characterized as negligent hiring, negligent supervision, failure to prevent harm, failure to provide treatment to victims, and outrageous conduct. The failure to prevent harm claim has been dismissed. The other claims are pending.

At some point after the School learned of the alleged assault, it began exploring insurance coverage. Both of its primary insurers denied coverage and refused to defend.[1] The School came to conclude that it has coverage in its CGL policy with Massachusetts Bay Ins. Co. (Mass Bay) and its Mass Bay umbrella policy, or it was left with a gap in coverage by the insurance broker that procured all of its insurance, Wieczorek Insurance, Inc. It then filed this declaratory action seeking to establish defense and indemnity duties against Mass Bay and bad faith or, in the alternative, liability against Wieczorek for saddling it with a coverage gap.

Plaintiffs and Mass Bay have filed cross-motions for summary judgment. The principal dispute is whether coverage is available under the Mass Bay primary CGL policy and the Mass Bay commercial umbrella policy. Mass Bay argues that no coverage is available, and even if it is, it does not benefit Ms. Koren as she is not an insured. Plaintiffs argue that if Mass Bay is found to have breached its duty to defend, then it is liable for Plaintiffs' fees and costs expended on their defense up to this point, and should be permitted to keep their current defense counsel at Mass Bay's expense for the balance of the tort suit. Mass Bay argues that if it is liable to provide

---

[1] The summary judgment record includes numerous allegations, many disputed, about representations about coverage attributed to agents of the School, Wieczorek, and Mass Bay. The court has disregarded all such allegations as immaterial to this decision.

a defense, it is entitled to select defense counsel.

*Defense and indemnity under the primary CGL policy*

The dispute related to the primary CGL policy is limited to little-litigated policy language in a coverage territory provision.[2] Plaintiffs suggest that a plain reading supports coverage and that, in the event of ambiguity, the ambiguity should be construed in favor of coverage. Mass Bay advocates an interpretation of the disputed language that obviates coverage.

"We interpret insurance policies much like other contracts, striving to give effect to the intent of the parties as expressed by the plain language of the instrument." *DeBartolo v. Underwriters at Lloyd's of London*, 2007 VT 31, ¶ 9, 181 Vt. 609. "It is the policy of this Court to favor complete coverage when interpreting insurance contracts. We interpret ambiguities in favor of the insured." *Northern Security Ins. Co. v. Rossitto*, 171 Vt. 580, 582 (2000) (citation omitted). "'Equivocation and uncertainty, whether in the significance of the terms used or in the form and construction of sentences,' constitute ambiguity." *Northern Security Ins. Co., Inc. v. Doherty*, 2009 VT 27, ¶ 9, 186 Vt. 598 (quoting *Northern Security Ins. Co. v. Hatch*, 165 Vt. 383, 386 (1996)).

"A claim against the insured triggers the insurer's duty to defend whenever it appears that the policy might cover that type of claim." *Hardwick Recycling & Salvage, Inc. v. Acadia Ins. Co.*, 2004 VT 124, ¶ 15, 177 Vt. 421. "In determining whether there is a duty to defend, we compare the language of the policy to the language of the complaint." *Co-operative Ins. Cos. v. Woodward*, 2012 VT 22, ¶ 10, 191 Vt. 348.

There is no dispute that the CGL policy (No. ZDV 8823860 00) includes sexual misconduct coverage, that the alleged aggressor, Mr. Wangchuck, is an Indian national who worked for the School at the time of the incident, and that the alleged incident occurred in India in the course of Ms. Labbance's semester abroad.

The occurrence-based CGL policy is modified by an ISO "sexual misconduct or sexual molestation liability" endorsement identified as 421-0334 09 08 (the Endorsement) for which the School paid additional premium. The insuring agreement in the Endorsement expands the meaning of "bodily injury" to include a "'sexual misconduct or sexual molestation incident' that takes place in the 'coverage territory.'" Endorsement § A(1)(b)(1). There is no dispute that the alleged sexual assault describes bodily injury within the meaning of the Endorsement. The sole issue is whether the alleged assault occurred within the coverage territory.

"Coverage territory" is not defined in the Endorsement. It is defined in the definitional section of the general coverage form, identified as CG 00 01 12 07 (the CGL Policy). There is no dispute that this is the operative definition:

"Coverage territory" means:

---

[2] Of the dozen or so reported cases that quote the language disputed in this case, only one, a trial court level decision cited by both parties, comes close to interpreting it. Though the parties examine it closely, the court does not find it particularly helpful. *Spears v. Nationwide Mut. Ins. Co.*, 254 F.Supp.2d 144 (D.D.C. 2003).

**a.** The United States of America (including its territories and possessions, Puerto Rico and Canada; [or]

.   .   .

**c.** All other parts of the world if the injury or damage arises out of:

.   .   .

> **(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business;

.   .   .

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

CGL Policy § V(4). The following are undisputed: India is a part of the world other than the U.S., Canada, and Puerto Rico; Ms. Labbance's "home" is in the U.S.; Mr. Wangchuck's home is not in the U.S., Canada, or Puerto Rico; and the suit on the merits is underway in the U.S. Mass Bay has not contested the temporal ("short time") limitation on the person's activities in India.

The point of contention thus boils down to whether the alleged sexual assault arose out of the activities of a person whose home is in the U.S. but who was in India on the School's business. The most reasonable reading of this language favors coverage. Ms. Labbance is a person whose home is in the U.S. but who was in India on the School's business. The Policy does not limit the meaning of "business." As a general matter, the business of the School is the education of its students. There is no suggestion that Ms. Labbance was in India for any reason other than to participate in the School's semester abroad program. She thus was there while on the School's business.

The alleged sexual assault *arose out of* Ms. Labbance's activities. To arise out of means to *flow from*, *result from*, or *originate out of*; it requires some connection but does not connote traditional legal causation and thus cannot require fault. See 7 Steven Plitt, et al., Couch on Ins. § 101:52 (3d ed.) (WL updated Nov. 2014); 3 Allan D. Windt, Insurance Claims and Disputes § 11:22A (6th ed.) (WL updated Mar. 2014); Black's Law Dictionary 102 (7th ed. 1999). Ms. Labbance's "activity"—her participation in the semester abroad program—was the only reason she was in India and exposed to the alleged aggressor. The alleged assault is not disconnected in some meaningful way from that activity such that there is no coverage. A reasonable insured confronted with these circumstances and this policy language would expect coverage.

Mass Bay argues instead that the "person" on whom the analysis must exclusively turn is

3

Mr. Wangchuck, the alleged aggressor. If so, there could be no coverage: Mr. Wangchuck is an Indian national and his home is in India. Mass Bay arrives at this result largely by importing concepts related to causation, bodily injury, and sexual assault into the terms of the coverage territory provision. The Policy and Endorsement, however, plainly are intended to insure against bodily injury caused by a sexual assault so long as the assault occurred and the suit is brought in specific geographic locations. See *Waters v. Concord Ins. Cos.*, 169 Vt. 534, 536 (1999) ("Proper insurance contract interpretation requires that the policy provisions be read together and viewed as an integrated whole."). The coverage territory provision includes *location* limitations. It is not intended to limit coverage for any particular type of injury and does not focus on causation beyond its "arises out of" language. Mass Bay's focus on bodily injury and causation fit poorly with this policy language.

Mass Bay claims to find support for its interpretation in the concurrent causation doctrine and a trial court decision, *Co-operative Ins. Cos. v. Woodward*, No. 168-8-10 Oecv (Vt. Super. Ct. Apr. 2011) (Eaton, J.), available at 2011 WL 8472970. The concurrent causation doctrine provides that "if an occurrence is caused by a risk included within the policy, coverage may not be denied merely because a separate excluded risk was an additional cause of the accident." *State Farm Mut. Ins. Co. v. Roberts*, 166 Vt. 452, 457 (1997). The doctrine focuses attention on the separateness of the hazards and actual causal chains and away from liability theories. See generally *Mailhiot v. Nationwide Mut. Ins. Co.*, 169 Vt. 498 (1999) (discussing how the doctrine operates in the context of a covered negligent supervision claim and excluded but related underlying tort); *Woodward*, 2011 WL 8472970 (distinguishing excluded injury from theories of liability). In short, the concurrent causation doctrine and *Woodward* address problems not presented by this case. Here, there is no need to segregate an excluded claim from a covered one or an injury from a theory of liability. Bodily injuries arising out of sexual assaults are intended to be covered by the policy in this case. The liability theories forming the claims in the underlying complaint also are covered. These matters do not control the coverage territory provision.

Accordingly, the CGL policy provides coverage for the claims, as alleged, in the underlying complaint and Mass Bay is in breach for refusing to defend. Plaintiffs suggest that the same outcome would be reached if the "person" out of whose activities the bodily injury arose were considered to be Plaintiffs rather than Ms. Labbance. Because coverage exists in reference to Ms. Labbance, the court does not need to reach that issue.

*The umbrella policy*

The availability of coverage in the primary CGL policy limits the dispute in the umbrella policy to which of two competing endorsements is effective. The umbrella policy has two endorsements that, in identical or nearly identical language, *exclude* coverage for incidents of abuse or molestation and related negligent employment, investigation, supervision, etc. One such endorsement, 473-0060 12/05, contains an exception that reads:

> This exclusion does not apply if valid "underlying insurance" for the exclusion described above exists or would have existed but for the exhaustion of the underlying limits of such "underlying insurance." Coverage provided will follow

4

the provisions, exclusions, conditions and limitations of the "underlying insurance."

The other endorsement, 473-0105 (01/07), omits the exception. The exception to the exclusion makes umbrella coverage available. Umbrella coverage is not available in the endorsement without the exception.

Mass Bay argues that the 473-0105 (01/07) endorsement (no coverage) supersedes the 473-0060 12/05 endorsement (coverage available) because the former came later in time. The theory is that a later-in-time endorsement prevails over an earlier-in-time endorsement with which it conflicts. Mass Bay cites *some* out-of-state authority in support of that general principle. It presumably relies on the "(01/07)" and "12/05" expressions in the endorsement identification numbers to indicate the relevant dates.

Plaintiffs argue that the 473-0060 12/05 endorsement should prevail because it appears deeper into the pile of papers that is the policy as a whole. It also suggests that a reasonable insured seeing both endorsements in a policy would think that sexual assault coverage is preserved or, if the conflicting provisions create an ambiguity in that regard, then the ambiguity should be construed in Plaintiffs' favor.

The court is not persuaded that the principle on which Mass Bay relies is sufficient to decide the matter in the circumstances of this case. Here, there is one policy with two directly conflicting exclusions, one clearly excluding coverage, the other clearly providing coverage. All else being equal, two irreconcilably conflicting provisions is an ambiguity per se that must be interpreted in the insured's favor. Mass Bay's interpretation depends on the fact that the 01/07 endorsement was incorporated into the policy after the 12/05 endorsement and that this occurred in some manner that makes it fair to attribute knowledge of that chronology and its significance to the insured.

The record simply does not support Mass Bay's argument. The 01/07 and 12/05 dates, presuming they are dates at all, both long precede the coverage period. They could refer to incorporation into the policy. They also could refer to ISO's copyright. They could refer to the latter without necessarily reflecting on the former. Each form contains an ISO copyright statement next to the numerals. There is no course of conduct between the insurer and the insured that would have indicated to the insured which of these endorsements was intended to supersede the other. A reasonable insured who merely had the policy as a pile of papers would have no reasonable basis to believe what Mass Bay insists—that the policy contained the 12/05 exclusion until it was replaced by the 01/07 exclusion—that coverage was included until it was excluded.

In this case, the conflicting endorsements present an ambiguity, which the court interprets in favor of the coverage. The 12/05 endorsement prevails. Accordingly, Mass Bay was and is required to provide a defense for the School in the underlying tort litigation.

5

*Whether Ms. Koren is an employee*

The same ruling applies to Ms. Koren if she is an insured. The parties agree that she is insured only if she was, at the relevant time, the School's "employee." Plaintiffs argue that, for purposes of the duty to defend, Ms. Koren must be treated as an employee because she is alleged to be the School's employee in the tort complaint. They also argue that the court can decide on summary judgment that, as a matter of law, she actually was its employee. Mass Bay argues that the court is not limited to the four corners of the tort complaint on this issue and Ms. Koren's status as an employee is genuinely disputed.

The court concludes that, in considering whether Ms. Koren is an insured, it is appropriate to pierce the allegations of the underlying complaint and evaluate extrinsic evidence. There are exceptions to the rule that the duty to defend must be triggered by the underlying allegations. One is as follows: "an insurer should not have a duty to defend an insured when the facts alleged in the complaint ostensibly bring the case within the policy's coverage, but other facts that are not reflected in the complaint and are unrelated to the merits of the plaintiff's action plainly take the case outside the policy coverage." 1 Allan D. Windt, Insurance Claims and Disputes § 4:4 (6th ed.) (WL updated Mar. 2014). Windt cites *Blake v. Nationwide Ins. Co.*, 180 Vt. 14 (2006) in support. A related exception applies "when the company determines that, even assuming that the insured is liable based on the allegations in the complaint, there can, in fact, be no coverage because of the falsity of some extraneous fact alleged in the complaint." Insurance Claims and Disputes § 4:4.

The exception applies with even more vigor when the question is whether the tort defendant is an insured at all.

> Before the general principle regarding the duty to defend applies, it must be shown that the person claiming coverage is, in fact, an insured. The insurer has imposed on itself a contractual duty to defend its insured against suits alleging facts that, if proved, would constitute a risk insured against under the provisions of the policy. It has not imposed on itself a duty to defend a complete stranger to the contract. Several courts, therefore, have held that the insurer is not obligated to provide a defense for a stranger merely because the plaintiff alleges facts that, if true, would make the stranger an additional insured as defined in the policy. They have, instead, allowed the insurer to avoid providing a defense if extrinsic evidence demonstrates that the plaintiff's allegations are untrue, and that the defendant is not an insured.

> This is a salutary rule. It is similar to the rule, discussed in § 4:4, allowing the use of extrinsic evidence to justify a refusal to defend when some extraneous fact in the complaint, which would otherwise give rise to a duty to defend, is untrue. It goes farther than that rule, however, because the erroneous allegation that the defendant is an insured need not be immaterial to the plaintiff's cause of action.

1 Allan D. Windt, Insurance Claims and Disputes § 4:5 (6th ed.) (WL updated Mar. 2014)

(footnotes omitted).  The court has found no rule to the contrary in Vermont cases.  The question, then, is whether the summary judgment record demonstrates that Ms. Koren, at the relevant time, was an employee of the School.

The parties agree that, in this context, "employee" means employee versus independent contractor.  The parties also agree that the common law right-to-control test describes how this distinction is drawn.  For more on the test, see *Hathaway v. Tucker*, 2010 VT 114, ¶ 23, 189 Vt. 126; *RLI Ins. Co. v. Agency of Transp.*, 171 Vt. 553, 554; *Crawford v. Lumbermen's Mut. Cas. Co.*, 126 Vt. 12, 18 (1966); *Kelley's Dependents v. Hoosac Lumber Co.*, 95 Vt. 50, 53 (1921).

The court is unable to resolve Ms. Koren's employment status as a matter of law on this record, however.  Certain characteristics of Ms. Koren's work for the School tend to support a finding that she was an employee.  Others imply that she may have been an independent contractor.  The impediment to a ruling is that the record includes little relevant evidence other than Ms. Koren's deposition testimony, which itself does not appear to be fully calculated to address this issue.  The *full* picture of the services Ms. Koren provided to the School and the terms on which they were delivered is simply too undeveloped to support summary judgment.  For current purposes, the court considers the matter disputed.

### Bad faith

The court declines to address Plaintiffs' bad faith claim at this time.  Plaintiffs did not raise the issue in their own summary judgment motion.  Mass Bay raised the matter in its motion, but only to the extent of mentioning it in passing in a single footnote.  Mass Bay's Motion for Partial Summary Judgment at 2 n.2 (filed Sept. 4, 2014).  There, Mass Bay makes two "arguments": the bad faith claim must fail because (1) there is no duty of defense or indemnity in either the CGL or umbrella policy as a general matter, and (2) in the event that any coverage exists, Mass Bay's policy interpretation to the contrary at a minimum was "fairly debatable."  The first argument is foreclosed by the court's analysis above.  Plaintiffs request more time for discovery before the court rules on the second argument.

Mass Bay's footnoted argument is not sufficiently briefed for the court to conclude that the matter has been fairly raised at all.  The question of whether the insurer, in denying coverage, did so for "fairly debatable" reasons presents a richer, more complex inquiry than Mass Bay's *ipse dixit* argument implies.  Notably, the lack of authority on the disputed coverage territory language is not itself sufficient to render Mass Bay's interpretation fairly debatable.  Similarly, an overly "narrow construction of an ambiguous policy provision of [the insurer's] own drafting, in the face of the rule that ambiguous policy provisions are construed against the insurer, may amount to bad faith."  Stephen S. Ashley, Bad Faith Actions Liability & Damages § 5:11 (2d ed.) (WL updated Sept. 2014).  Plaintiffs are entitled to discovery.

### Defense costs to date and selection of defense counsel going forward

Plaintiffs have argued that, if they establish Mass Bay's breach, then they are entitled to defense costs reasonably expended to date in consequence of the breach, and the right to keep the defense counsel already selected by them going forward, at Mass Bay's expense.  Mass Bay

does not dispute liability for defense costs reasonably expended by the School to date. The court concludes that Mass Bay is so liable as a matter of law, in an amount yet to be established. The court cannot so rule at this time with regard to Ms. Koren's defense costs. She must establish that she is an insured under the policy before the court can find Mass Bay in breach of its duty to defend her.

Mass Bay cites Judge Crawford's decision in *Northern Sec. Ins. Co. v. Pratt*, No. 838-11-10 Wncv, 2011 WL 8472930 (Vt. Super. Ct. May 19, 2011) (attached), available at https://www.vermontjudiciary.org/20112015%20Tcdecisioncvl/2011-5-27-1.pdf, in support of its claimed right to appoint independent counsel to represent the School in the tort litigation. The School argues that *Pratt* is distinguishable from this case.

*Pratt* is well reasoned. The court reads it to stand for the general proposition that, absent peculiar circumstances suggesting otherwise, when the insurer provides a defense, it has the right to select *independent* counsel to represent its insured. The court sees no reason to deviate from that rule in this case. Moreover, in the complaint, Plaintiffs expressly requested that Mass Bay provide a defense. In other words, they voluntarily chose an insurer-provided defense in circumstances in which they may have had alternative remedies available. The court concludes that Mass Bay retains the right to select and appoint independent defense counsel.

ORDER

For the foregoing reasons, Plaintiffs' and Mass Bay's cross-motions for summary judgment are granted in part and denied in part as set forth above.

The School is entitled to a defense in the underlying tort suit at Mass Bay's expense by independent counsel selected by Mass Bay and to damages for its reasonable defense expenses incurred to date.

Dated at Montpelier, Vermont this _____ day of February 2015.


_____
Brian J. Grearson
Superior Judge

8